## HOLSTON NATIONAL BANK v. AMERICAN CHRISTIAN MISSIONARY SOCIETY et al.

Eastern Section. February 23, 1929.

Petition for Certiorari denied by Supreme Court, March 7, 1930.

Webb, Baker & Egerton and R. M. McConnell, all of Knoxville, for appellants.

J. Alvin Johnson and Steinmetz & Lowe, all of Knoxville, for appellees.

THOMPSON, J.   The pleadings in this cause are so lengthy that we will not state them, but will state the facts, the contentions of the parties and our conclusions thereon.

The Forest Avenue Christian Church of Knoxville, Tennessee, was a religious association, of which W. T. Roberts, George A. Leach and H. P. Webb, were the trustees by whom all of its business was transacted.   Rev. E. D. Fritts was its pastor.   It owned property on Forest Avenue in Knoxville, upon which the church was situated.   Said property was worth about $10,300.

On March 9, 1923, said church or its trustees borrowed $2,500 from S. R. Rambo & Company, and executed to said company three negotiable promissory notes, two of which were in the sum of $1,000 each, and the other in the sum of $500 all due and payable on March 9, 1924, and bearing six per cent interest from date payable semi-annually and providing for ten per cent attorney's fees, etc. They were secured by a deed of trust of even date on said property, signed and acknowledged, etc., by the church and said trustees. Said deed of trust was to the Union Trust Company, Trustee, and was registered in the Register's office of Knox county on March 10, 1923, and was recorded in Book No. 269, page 268.

74

Long prior to the maturity of the notes Rambo & Company sold them to the Knoxville Lyceum & Art Museum, but neither the church nor its trustees were aware of this fact.

Shortly prior to the maturity of the notes, Rev. Fritts applied to the American Christian Missionary Society to loan the church $2,500. His reason and idea were that the church was unable to pay the Rambo notes and that the church could carry a $2500 loan from the American Christian Missionary Society at a smaller interest rate than it was paying on the $2,500 of Rambo notes.

The American Christian Missionary Society was an Ohio religious corporation, but its principal office and place of business was at St. Louis, Missouri. It had never domesticated in Tennessee, but had loaned money secured by mortgages to a number of Christian churches in this State, as well as in other states, and as an incident to the making of a number of said loans it had procured the aid of local banks in this State in the paying off of previous mortgages so that its mortgages would be prior ones on the property securing its loans. However, all of its loans were negotiated at and by its office in St. Louis, and were payable in St. Louis.

Such negotiations were had between the church and the said Missionary Society that the latter agreed to loan the former the sum of $2500, secured by a first mortgage on the church's property, and the said Missionary Society (as between it and the church) undertook the duty of paying off the Rambo notes and procuring a release of the mortgage securing the same. On behalf of the church these negotiations, etc., were conducted by the Rev. Fritts, and on behalf of the Missionary Society they were conducted by Mr. M. H. Gray, of St. Louis, who was the Secretary and Treasurer of the Board of Church Extensions, a department of said American Christian Missionary Society.

Mr. Gray prepared a note or notes and a deed of trust on the church's property securing the same, and the church and its trustees executed said note or notes and said deed of trust, and recorded said deed of trust and sent it to Mr. Gray, along with the notes. Then, on March 10, 1924, Rev. Fritts having suggested the Holston National Bank, of Knoxville, as a reputable bank, Mr. Gray from St. Louis wrote said bank a letter as follows:

"I am handing you herewith draft for $2,500, amount of loan we are making the Forest Avenue Christian Church of your city, together with receipt to be signed by the trustees of said Church.

"As soon as the trustees have signed the receipt, you are hereby authorized to use the proceeds of draft in payment of a certain mortgage in favor of Union Trust Company, Trustee, dated March 9, 1923, recorded March 10, 1923, in Trust Book 269, pages 268 and 269. You will have this deed of trust properly cancelled of

record and forward same to me, together with receipt from the trustees for the loan.

"I have stated to Mr. Ernest D. Fritts, 311 12th street of your city, that if there are any charges in connection with closing the transaction the trustees of the church are to pay same.

"I have also requested Mr. Fritts to arrange for the trustees to call at your bank promptly, so that there will be no unnecessary delay. The trustees will turn over to you $75, being the amount of interest due on the deed of trust referred to above.

"Thanking you in anticipation of your attention I am, very truly yours."

This letter reached the Holston National Bank on March 12, 1924, and upon being opened by Mr. Russell who opened all of the bank's mail, it was immediately turned over to Mr. Jos. E. Hacker for attention. Mr. Hacker was at that time Assistant Cashier of said bank, and he knew that Mr. S. R. Rambo was the President of the Union Trust Company. Mr. Hacker at once called Mr. Rambo over the telephone and told him that he had the money and that he would pay it to him upon receiving the receipt from the trustees of the church and the deed of trust properly released and cancelled. Mr. Rambo told him that he would attend to the matter and would have the trustees of the church to go to the bank and pay the $75 of interest and sign the receipt, etc.

On the next morning, i. e., March 13, 1924, both Mr. Rambo and the three trustees went to the bank and called upon Mr. Hacker. It is not clear whether the three trustees were in the bank at the same time Mr. Rambo was there, but if they were they undoubtedly did not hear what passed and occurred between Mr. Rambo and Mr. Hacker. They simply delivered $75 to Mr. Hacker, signed a receipt and left the bank.

Mr. Rambo took with him to the bank a copy of the deed of trust of March 9, 1923, to the Union Trust Company, Trustee, securing the two $1000 notes and the one $500 note. This copy, of course, showed that the three notes were payable to S. R. Rambo & Company, and that the Union Trust Company was simply the trustee in the deed of trust. This copy was sent up with the record, and it seems to us that any one who might examine it with even slight care could see that it is only a copy. It had the register's marginal release stamped on the back of it with the date spaces filled in with pen and ink as March 13, 1924, and it purported to have been signed by: "Union Trust Co. By W. L. Jack, Secty." It also purported to have been attested by C. M. Oglesby, Deputy Register.

Mr. Hacker seems to have only glanced at said copy when Rambo handed it to him, and he thought that it was the original deed of

trust. He did not even examine it enough to see that the notes which it had been executed to secure were payable to S. R. Rambo & Company, and he remained under the impression that the indebtedness which said deed of trust secured was in favor of the Union Trust Company. It does not seem to have occurred to him that the notes secured by the deed of trust might be outstanding in the hands of some one else. He did not go to the Register's office to see whether the deed of trust had in fact been released upon the margin where the same was recorded. Having received $75, and the signed receipt from the three trustees of the Church, and having received the copy of the deed of trust from Mr. Rambo, and without more, Mr. Hacker delivered to Mr. Rambo the Holston National Bank's cashier's check payable to the Union Trust Company for $2575, and Mr. Rambo left the bank with said check. The Holston Bank of course, cashed or collected the draft which Mr. Gray had sent it.

Mr. Hacker then wrote to Mr. Gray under date of March 13, 1924, the following letter:

"We acknowledge receipt of your letter of March 10th enclosing check for $2500, representing the amount of a loan which you are making to the Forest Avenue Christian Church of this City.

"We have today paid to the Union Trust Company of this City $2575, which represents the amount due them on a mortgage which they held. You will find enclosed the mortgage referred to which has been properly cancelled of record. We are also enclosing a receipt made out to you for $2,500, signed by the three Trustees of the Forest Avenue Church.

"We are making no charge for our services in this matter, and trust that we have handled this transaction in accordance with your wishes.

"Yours very truly," etc.

Upon receiving this letter, Mr. Gray, without examining the enclosed copy of the deed of trust, wrote Mr. Hacker, under date of March 18, 1924, as follows:

"I am in receipt of your favor of recent date, returning receipt of the trustees of the Forest Avenue Christian Church of your city, together with cancelled mortgage in favor of Union Trust Company.

"I note you made no charges for looking after these matters for the Church.

"Assuring you of our appreciation of your attention, I am, very truly yours," etc.

Having received the Cashier's check from Mr. Hacker, Mr. Rambo did not endorse it in the name of the Union Trust Company, as he, of course, had authority to do, being the president of the company, but endorsed it in the name of S. R. Rambo & Company,

of which he was also the president. Then, on the afternoon of the same day, i. e., March 13, 1924, he deposited it in the Union National Bank of Knoxville to the credit of S. R. Rambo & Company. The Union National Bank did not notice that said check was not endorsed by the Union Trust Company, and, of course, credited the account of S. R. Rambo & Company with the $2575. Said Union National Bank stamped on the back of said check its Clearing House endorsement as follows: "The Union National Bank; through Clearing House March 14, 1924, 9 Knoxville, Tenn. 9," and said check was paid by the Holston National Bank on said March 14, 1924, through the Clearing House. Said Holston National Bank did not notice that said check had not been endorsed by said Union Trust Company, and simply filed it away.

Both S. R. Rambo & Company and the Union Trust Company had accounts with the Union National Bank, and as stated, the check was deposited to the credit of S. R. Rambo & Company. The Union Trust Company never got any of the money or received any benefits from it.

Rambo or Rambo & Company never paid any of the money to the Knoxville Lyceum & Art Museum which was holding the three notes, and never advised it that he had collected said money. Said Knoxville Lyceum & Art Museum, in ignorance of what had occurred, continued holding the notes.

Some two months later, Rambo failed and his defalcations became known.

Thereafter the Knoxville Lyceum & Art Museum filed suit in the Chancery court and recovered judgment against the Church and its trustees on the notes, and a decree of foreclosure of the lien of its deed of trust, provided said judgment was not paid within a certain time. The Union Trust Company as trustee in the deed of trust was, of course, a party to this suit. The American Christian Missionary Society, recognizing its liability to the Church for having failed to properly discharge the indebtedness on the notes and for having failed to properly secure a release of the lien of the deed of trust securing said notes, furnished to the Church or its trustees the money with which to pay the said judgment and costs, and the Church or its trustees then paid the same on June 24, 1925—the total amount being $3029.24. Neither the Holston National Bank nor the Union National Bank were parties to the proceedings.

Thereafter the Church and its trustees and the American Christian Missionary Society filed suit in the Circuit Court of Knox County against the Holston National Bank to recover said sum of $3029.24, with interest from June 24, 1925.

Then, on February 9, 1927, the Holston National Bank instituted in the Chancery Court of Knox County the cause now under review against the American Christian Missionary Society, the Church and its trustees, the Union Trust Conmpany and the Union National Bank. The bill sought to enjoin the prosecution of said suit in the Circuit Court, but prayed that in the event complainant should be held liable to said Church, its trustees or said Missionary Society, that complainant have judgment against the Union Trust Company, which it was alleged had received the money, and that if complainant should not be entitled to a recovery against said Union Trust Company, it be awarded a recovery against the Union National Bank upon its endorsement of said Cashier's check.

Upon the final hearing, the Chancellor decreed as follows:

''1. That the complainant, Holston National Bank, was negligent in the payment of the money sent to it by the American Christian Missionary Society to release the trust deed in question in that it did not secure the notes which represented the indebtedness and did not pay the money to the lawful holder of said notes, and did not get a proper release of said trust deed or ascertain that the release was made by the true holder of the notes and that on account of such negligence the Holston National Bank, complainant, is liable to the American Christian Missionary Society, defendant and cross-complainant, for the sum of $2575, with interest from March 13, 1924, to this date, amounting to the sum of $669.50, and making in all the sum of $3244.50 for which execution is awarded the said American Christian Missionary Society against the Holston National Bank. Since full relief is granted in this decree the injunction heretofore issued enjoining the suit in the Circuit Court is made perpetual.

''2. That the Holston National Bank having paid the $2575, above mentioned to the Union Trust Co., and said fund having been received by the Union Trust Co. without the right to do so, the Union Trust Co. is liable to repay the same to the Holston National Bank on money had and received, and that accordingly the Holston National Bank is entitled to recover of the Union Trust Company the said sum of $2575, together with interest from March 13, 1924, amounting to $669.50, and making in all the sum of $3244.50, for which execution is awarded.

''3. That the complainant, Holston National Bank, has not sustained its claim of right to a decree against the defendant, Union National Bank, notwithstanding the endorsement by the Union National Bank of said check and its collection through the clearing house because the Holston National Bank cannot require the Union National Bank to guarantee it by reason of said endorsement against the consequences of its own wrongful act in payment of the money

to a party not entitled to receive it. The Union National Bank, therefore, is not liable to the Holston National Bank on account of said endorsement and the collection of said check. It is accordingly ordered, adjudged and decreed that the bill in so far as it seeks relief against the Union National Bank is dismissed.

"The costs of the cause will be paid by the Union Trust Co., for which execution is awarded."

From that part of the decree of the Chancellor holding it negligent and liable to the Missionary Society, and from that part of the decree refusing it a decree over against the Union National Bank, the complainant, Holston National Bank, has appealed to this Court and has assigned errors. From that part of the decree holding it liable to the Holston National Bank and holding it liable for the costs of the cause, the defendant, Union Trust Company, has appealed to this Court and has assigned errors.

We will take up first the assignments and contentions in behalf of the Holston National Bank.

It is first contended that the Missionary Society being a foreign corporation not domesticated in this State was not entitled to sue because it was doing business in this State in violation of our Statutes. On this question, the Chancellor in his memorandum opinion said:

"The transaction was not doing business in Tennessee. The loan was negotiated and made payable in Missouri. The incidental service of having the lien released of record in Knox County was not doing business within the meaning of our decisions on the subject, which hold that before a foreign corporation is denied the right to sue in this State it must be carrying on a 'substantial part' of its 'ordinary business.' The releasement of the lien, so as to make its security good was a mere incident; not a substantial part of the Society's business; and was no part of its ordinary business."

As hereinbefore indicated, although the Society had made other loans to churches in this State, in some of which it procured some local banks to look after the paying off and releasing of some prior liens, etc., yet all of its other loans, were negotiated in St. Louis and were made payable there. So, we do not think that the failure of the Society to domesticate in this State should prevent a recovery in its favor.

It is next urged that the Holston National Bank was acting as a gratuitous agent of the Society and of the Church and could not be held liable for nonfeasance, but only for misfeasance or gross negligence. It is true that said bank made no charge for its services in the matter in question. But Mr. Gray's letter of March

10, 1924, to the bank did not ask the bank to perform the services without charge, for he said:

"I have stated to Mr. Ernest D. Fritts, 311-12th St. of your city, that if there are any charges in connection with closing the transaction the trustees of the Church are to pay same." Mr. Fritts thought and expected that the bank would make a charge for its services and that said charge would be some small per cent of the money involved. And the trustees were not expecting the bank to perform the service without charge. Nothing seems to have been said between Mr. Hacker and the three trustees about any charge the bank might make, and there is nothing to indicate that had the bank after performing the service made a charge for it the trustees would not have paid it. In fact, had the service been performed properly there is no reason for us to doubt that the bank could have forced the payment of any reasonable charge it might have decided to make. Therefore, the mere fact that after performing the service the bank did not make a charge because a church was involved and told Mr. Gray in the above quoted letter of March 13, 1924, that it would make no charge, did not constitute the bank such a gratuitous agent as would prevent its being held liable for nonfeasance. But however this may be, we think the bank was guilty of gross negligence as will hereinafter appear.

It is next urged that the Missionary Society suffered no loss because the Church paid the judgment and terminated the lien securing the notes held by said Knoxville Lyceum & Art Museum —thus leaving the Missionary Society's mortgage or deed of trust as a first lien on the property. And further that the property was worth $10,300, which was more than both of the two indebtednesses involved. But as between the Church and the Missionary Society the latter had assumed the duty of paying off the indebtedness and releasing the lien and by its failure to perform (through the Holston Bank as agent) this duty it had rendered itself liable to the Church and had in fact furnished the Church the money with which to pay the judgment and discharge the lien which the bank should have discharged. As said by the Chancellor: "Said negligence (of the Holston Bank) was legally injurious to the Missionary Society, because it at once became liable to the Forest Avenue Church for said money, and actually paid it to the Church before this suit was brought. It is true it paid without being compelled by judgment of a court to do so. It was not necessary to await judgment before paying. It was sufficient that it could have been held liable by suit."

Moreover, the suit in the Circuit Court which the Holston Bank enjoined in the cause at bar was in the names of both the Society

and the Church or its trustees as parties plaintiff. And since both the Society and the Church and its trustees were parties to the cause at bar it does not seem that the bank should be concerned as to which of them it should be held liable to.

It is next urged that the Holston Bank was not guilty of negligence in the matter. This is based upon the following: That said bank being a national bank was not permitted to make loans on real estate and had had no experience in paying indebtednesses secured by deeds of trust, and no experience in releasing mortgages and deeds of trust on real estate, and therefore should not be held guilty of negligence in handling the matter as it did. That Mr. Gray's letter of March 10, 1924, not only made no mention of procuring the surrender of any notes but also indicated that the mortgage indebtedness was in favor of the Union Trust Company. That Mr. Hacker did exactly what said letter directed him to do and all that it directed him to do. And that Mr. Hacker had the right to assume from Mr. Gray's letter and from all the circumstances that if any outstanding notes had been or were involved, the trustees had or would procure their surrender or that such matter would be otherwise attended to than by him, etc.

Mr. Gray's letter of March 10, 1924, said:

"As soon as the trustees have signed the receipt, you are hereby authorized to use the proceeds of draft in payment of a certain mortgage in favor of the Union Trust Company, Trustee, dated March 9, 1923, recorded March 10, 1023, in Trust Book 269, pages 268 and 269. You will have this deed of trust properly cancelled of record and forward same to me, together with receipt from the trustees for the loan."

It seems to us that this should have been sufficient to have suggested the thought to an assistant cashier of a national bank that the mortgage or deed of trust might have been to the Union Trust Company, as trustee, to secure an indebtedness held by and owing to some one else. At any rate to comply with that part of the letter which said: "You will have the deed of trust properly canceled of record," it was necessary for Mr. Hacker to find out who was the true and lawful holder of the indebtedness secured, and to have him acknowledge the satisfaction thereof and to discharge the lien of the deed of trust. Now the copy of the mortgage which Mr. Rambo gave to Mr. Hacker showed that said mortgage was executed to the Union Trust Company, Trustee, to secure notes payable to S. R. Rambo & Company—not any indebtedness in favor of the Union Trust Company. Had Mr. Hacker made any examination at all of this mortgage he would have discovered this fact. But he accepted the copy of the mortgage without examining it and without even making any inquires about the indebtedness

which said mortgage secured and without even asking for a surrender of the notes. He simply trusted Rambo and failed utterly to give the matter any careful attention whatever. And some days later when he did go to the Register's office he saw that the release on the margin had not been signed by or in the name of the Union Trust Company nor by any one in its behalf, but had only been signed by W. L. Jack in a personal capacity. But still he did nothing. We are clearly of the opinion that the Holston National Bank was guilty of negligence which rendered it liable, and the assignments of error making the question that it was not will be overruled.

It is next insisted that since the notes had matured on March 9, 1924, and were therefore past due and in default of payment when on March 13, 1924, Mr. Hacker delivered to Rambo the Cashier's check payable to the Union Trust Company, there was an effective payment of the notes. This, because the trustee in a deed of trust represents and is competent to act for the cestui que trust in all matters pertaining to the execution of his duties, including the collection of the indebtedness secured by the deed of trust. On March 13, 1924, the Union Trust Company had taken no steps toward foreclosing the deed of trust, and the Knoxville Lyceum & Art Museum had not requested it to do so. Neither had the Knoxville Lyceum & Art Museum authorized the Union Trust Company to collect said notes. We do not think the insistence is well taken and the same will be overruled.

We will deal next with the insistence of the Union Trust Company that it should not have been held liable to the Holston National Bank for money had and received as it did not in fact receive any of the money or any benefits therefrom.

The record in this cause does not show that S. R. Rambo & Company and the Union Trust Company, though separate legal entities, were so closely related and so dominated by Rambo that they should be regarded and treated as one and the same. The Union Trust Company was a corporation legally organized and existing. While Mr. Rambo was also the head of S. R. Rambo & Company, he was the president of the Union Trust Company. W. L. Jack was the secretary of the Union Trust Company, and James A. Gleason was its vice-president. Although Jack and Gleason were also employees of Rambo or Rambo & Company, it is not clear what positions they occupied with Rambo or Rambo & Company. It is true the same office or office space was occupied by Rambo & Company and by the Union Trust Company, and that at times Rambo & Company's employee at its cashier's desk accepted payments which were brought into the office for the Union Trust Company. But when checks payable to the Union Trust Company were brought

into the office and were given to the employees of Rambo & Company, those employees turned said checks over to the officers (generally to Mr. Gleason who kept the books) of the Union Trust Company. Rambo & Company and the Union Trust Company had separate accounts with the Union National Bank, and Mr. Gleason who was the vice-president of the Union Trust Company and very active in its management was thoroughly honest and had nothing whatever to do with Rambo's defalcations.

As stated, the cashier's check in question, although payable to the Union Trust Company, was never endorsed by it but was endorsed by Rambo in the name of S. R. Rambo & Company and was deposited in the Union National Bank to the credit of S. R. Rambo & Company. The Union Trust Company never received any of the proceeds of said check or any credit or benefit from it. And for some weeks after March 13, 1924, S. R. Rambo & Company, as well as the Union Trust Company, had an ample balance in the Union National Bank to have protected said Union National Bank or the Holston National Bank on said check. But, as hereinbefore indicated, the Union National Bank did not notice that the check had not been endorsed by the Union Trust Company and it credited the proceeds of said check to the account of S. R. Rambo & Company. Then through the clearing house it collected said check from the Holston National Bank. Then the Holston National Bank failed to notice that the check had not been endorsed by the Union Trust Company and it simply filed it away where it remained until after the failure of Rambo and Rambo & Company, due to the defalcations of Rambo, and until Rambo & Company's account or balance in the Union National Bank had been wiped out, and until there was no other way in which said banks could protect themselves.

Now as between the Holston National Bank and the Union Trust Company, which one of them should sustain the loss? Had the Union Trust Company received the proceeds of the check or the benefit thereof, the question would have been simple. But it did not. So, we will again examine what occurred between Mr. Hacker and Mr. Rambo.

When Hacker called Rambo over the telephone and when Rambo first went into the bank Hacker was undoubtedly under the impression that the indebtedness which he was going to pay was an indebtedness in favor of the Union Trust Company. But Rambo undoubtedly perpetrated a fraud on him in convincing him that said indebtedness was in favor of the Union Trust Company. In fact, Rambo showed and gave to him a copy of the deed of trust with a release on the back of it which purported to have been signed by the Union Trust Company and to have been attested by the Regis-

ter, and which in substance stated that the Union Trust Company was the "true lawful holder" of said indebtedness. So, we think Rambo was clearly guilty of a fraud upon Mr. Hacker which however was no doubt for his (Rambo's) own personal benefit.

But the Union Trust Company was not entitled to collect the indebtedness and Hacker himself was guilty of negligence as hereinbefore indicated in giving the cashier's check to Rambo. And had the Holston National Bank upon the return of the check noticed that it failed to have the endorsement of the Union Trust Company, and therefore returned the check to the Union National Bank on that account, and had the Union National Bank returned the check to Rambo & Company for proper endorsement by the Union Trust Company, it is speculative as to what would have occurred. If it had gone into Rambo's hands, he would no doubt have endorsed the name of the Union Trust Company on it, as he would as president have had the power to do, and would no doubt have returned it to the Union National Bank to be credited to the account of Rambo & Company. But had the check gone into Gleason's hands, the occurrence might have been entirely different, and there would still have been enough money in the Union National Bank to the credit of Rambo & Company to have enabled the banks to protect themselves on the check.

Now, which company should stand this loss occasioned by the dishonesty of Rambo? The Union Trust Company which held him out as its president but which has received no benefit from the transaction, or the Holston National Bank, the negligence of whose officer in charge of the transaction for it, made the loss possible?

As the president of the Union Trust Company, Rambo did not have actual authority to represent to Mr. Hacker of the Holston National Bank that the Union Trust Company was the owner of the indebtedness and was the proper person to whom to make payment when as a matter of fact the Union Trust Company was not the owner of the indebtedness and was not the proper person to whom to make payment. And if it is said that as president he had apparent authority to make such representation, the answer is that Mr. Hacker had the information to the contrary actually in his hands at the very time, and it was his own negligence that he did not examine it. And again upon the return of the check the Holston National Bank had at least a slight chance of avoiding the loss, but let it slip by when it failed to discover that the check had not been endorsed by the Union Trust Company.

Upon considering the entire transaction, we are of the opinion that the Holston National Bank is not entitled to have the court shift its loss to the Union Trust Company, and that the Chancellor erred in awarding it a recovery against said Union Trust Company,

and in adjudging the costs of the cause against said Union Trust Company. See Ruohs v. Bank, 94 Tenn., 57, 28 S. W. 303.

The remaining question arises on the insistence of the Holston National Bank that it should have been given a judgment over against the Union National Bank on that bank's endorsement of the check. As stated, the check was collected by the Union National Bank from the Holston National Bank on its stamped clearing house endorsement and through said clearing house. The stamped clearing house endorsement was as follows:

"The Union National Bank; through Clearing House. March 14, 1924. 9 Knoxville, Tenn. 9." The figure "9" was the Union National Bank's clearing house number.

In the Chancellor's memorandum and opinion he said:

"The Union National Bank, in my opinion, is not liable over to the Holston National Bank by reason of its endorsement of the check in question and its payment to the Union National Bank.

"The check bore only one endorsement, that of the Union Bank. With that endorsement it was presented to the Holston and paid. Now the Holston insists that this endorsement warrants it against the liability which the court decrees against the Holston as a result of negligence.

"It will be observed from the Negotiable Instruments Act, Sec. 66, that this warranty extends only to holders in due course. The Holston when it took up the check by payment did not become a holder in due course. At the time it paid the check it was charged with notice that this was the same check which it had negligently delivered to the Union Trust Company without ascertaining that it was entitled to receive it, by a surrender of the evidence of indebtedness. If it was guilty of negligence in delivering the check to a party not entitled to receive it, it was still charged with a knowledge of that negligence when it paid said check and with this notice, it was not a holder in due course.

"In the case of Bank v. Bank, 115 Tenn. 64, the first headnote reads as follows:

" 'It is negligence for a drawee bank to pay a forged check drawn on it in the name of a customer, whose signature is well known to it, where the cashier does not examine the signature closely, but relies on the previous endorsements.' "

"In that case the court held that the drawee bank could not rely upon the warranty of the previous endorsing bank, for the reason that it was the duty of the drawee bank to know the signatures of its customers, and that it was negligent in not knowing, and was not therefore a holder in due course, and could not rely upon the endorsement to save itself from its own negligence.

"The whole trouble in the instant case lies in the fact that the Holston drew its check in favor of a party not entitled to receive it, and by its negligence it failed to ascertain that it was not entitled to receive it, which it could easily have done by requiring a surrender of the evidence of indebtedness, if it had it.

"Now, if the drawee bank, the Holston, under such circumstances does pay the check when presented, it is a payment with notice, and it cannot be heard to insist against an endorser, that notwithstanding it wrongfully delivered the check the endorser should protect it against the consequence of such a wrongful act.

"If the Union Trust Company had presented the check the Holston would have paid it. Such payment would have been wrongful, and it would have suffered the loss. Why then, should it be relieved, and the burden thrown on another, simply because the check comes through another channel, rather than from the payee direct? It would not be just.

"He who comes into equity must come with clean hands. The complainant's own wrong is the source of all the trouble.

"When one of two persons suffers a loss it should fall on him whose act caused or made the wrong possible.

"The position of the Holston simply is this: 'If I have done wrong, and have to suffer by reason of it, the Union should take the burden off my shoulders.'

"The complainant cites the case of Peoples Bank v. Franklin Bank, 88 Tenn. 298. That case was decided before the passage of the Negotiable Instruments Act, and if it could have any application, its force as a decision was practically destroyed by direct reference and criticism in the case of Bank v. Bank, 117 Tenn. 68.

"I am of opinion that well established rules of equity will not permit the Holston, upon being held liable for its own wrong, to saddle the consequence of that wrong upon the Union Bank."

As stated, both banks were members of the Knoxville Clearing House Association, and we quote from its charter and by-laws as follows:

"In lieu of the written endorsement of a cashier or other officer of a member on all checks sent to the Clearing House they shall bear the impress of a uniform stamp, and the Committee of Supervision shall designate the form of said stamp.

"The stamped endorsement of a member of the Clearing House Association shall be held as a sufficient guarantee and responsibility to any member for all previous endorsements.

. . . . . . .

"In case of all items, whether restrictively endorsed or otherwise, sent through the exchanges by members of the association, the member sending the item shall be deemed and held as guaranteeing

the authenticity of all endorsements thereon, and if such guarantee does not expressly appear, it shall be implied.

"Errors in exchanges and claims arising from the return of checks or from any other cause are to be adjusted directly between the members who are parties to them, and not through the Clearing House.

"All checks or other items in the exchanges returned for any cause whatever, shall be returned the same day by 3 o'clock p. m. (except on Saturdays, such items must be returned by 1:30 o'clock p. m.) to the Clearing House and the said member shall immediately refund to the Clearing House the same amount which it received through the Clearing House settlement for the checks or items, and if not returned by 3 o'clock p. m. (and 1:30 o'clock p. m. on Saturdays) the responsibility of the member through which said checks or other items shall have passed, shall cease.''

The foregoing provisions do not make it clear that the Union National Bank by stamping its Clearing House endorsement on the check and by collecting it through the Clearing House thereby warranted to the Holston National Bank that said check had been endorsed by the payee therein, the Union Trust Company, when in fact said check did not even purport to bear any such endorsement. Neither does the evidence make it clear that the member banks so construed the above quoted provisions. The evidence does show that it was the custom of the member banks when they observed missing or insufficient endorsements to return the paper for the purpose of supplying the endorsements, and it shows that if the Holston Bank had noticed that the check in question had not been endorsed by the Union Trust Company it would have had the right to decline to honor it and to have returned it to the Union Bank for proper endorsement. But, as stated, the Holston Bank, like the Union Bank, did not observe that the check had not been endorsed by the Union Trust Company.

Now if the Holston bank had returned the check to the Union Bank and the Union Bank had returned it to Rambo & Company for proper endorsement, the probabilities are that Rambo would simply have endorsed the name of the Union Trust Company on it and would then have put it back in the Union Bank to the credit of Rambo & Company and the Holston Bank would have suffered the loss anyway.

But however the above may be, it seems to us that the Chancellor's reasoning is sound and applies just as well to the above quoted provisions of the charter and by-laws of the clearing house as it does to the Negotiable Instruments Act. The Holston Bank was guilty of negligence in giving its cashier's check to Rambo be-

cause neither Rambo nor the Union Trust Company were entitled to it, and it was still chargeable with that negligence and with a knowledge thereof when it paid said check through the clearing house, and we therefore do not think it was entitled to hold the Union Bank on any warranty which its Clearing House endorsement might 'otherwise have afforded.

Neither do we think that the Holston Bank is entitled to recover from the Union Bank upon the theory that the Union Trust Company not having endorsed the check, the Union Bank never acquired any title to it, and having gotten the money on it from the Holston Bank, is liable to said Holston Bank for money had and received, etc. It seems to us that the Chancellor's reasoning also answers this contention. And in addition the money actually went to Rambo & Company. After all is said that can be said, the fact still remains that due to the negligence of the Holston bank, Mr. Rambo fraudulently got money from the Missionary Society or the Church on account of which the Holston Bank has been held liable to the Missionary Society. And before said Holston Bank should be held entitled to shift this burden to the Union Bank it should show a clear case of right—which it has not done.

The decree of the Chancellor will be modified by setting aside that part which awarded judgment in favor of the Holston National Bank against the Union Trust Company, and that part which adjudged the costs of the case against the Union Trust Company. In all other respects the decree will be affirmed. The costs of the cause, including the appeals, will be adjudged against the Holston National Bank.

All concur.