Pioneer, etc., Loan Co. *v.* Cannon.

\* PIONEER, ETC., LOAN CO. *v.* CANNON.

(*Jackson.* May 16, 1896.)

1. FOREIGN CORPORATIONS. *Not required to comply with Act of 1891, when.*

   A foreign corporation may, without compliance with require-
   ments of Acts 1891, Ch. 122, as to filing charter, etc., acquire
   and hold lands in this State purchased since the passage of
   said Act, in the collection of its own debt, at trustee's sale
   made pursuant to a trust deed executed for its benefit anterior
   to the passage of said Act. (*Post, pp. 600–603.*)

   Act construed: Acts 1891, Ch. 122.

2. BUILDING AND LOAN ASSOCIATIONS. *Usury.*

   A note, and mortgage of lands situated in this State to secure it,
   made in Minnesota to a building and loan association of that
   State, and stipulating for the payment of five per cent. interest
   per annum and five per cent. premium per annum, is not usu-
   rious, it appearing that the company had authority, under
   its charter and the laws of Minnesota, to make such contract.
   (*Post, p. 603.*)

   Case cited and approved: Patterson *v.* Workingmen's B. & L.
   Association, 14 Lea, 677.

3. SAME. *Forfeited premium payments.*

   Forfeited payments made by a member of a building and loan
   association on shares, which, under the express terms of the
   contract, have lapsed in consequence of his default, cannot be
   credited upon his loan from the association. (*Post, pp. 603–606.*)

---

\* On the general subject of the exclusion of foreign corporations, see note to
*Cohn Export & Com. Co.* v. *Poole* (S. C.), 24 L. R. A., 289. As to the forfeiture of
payments to a loan association, see note to *Southern B. & L. Asso.* v. *Anniston L. &
T. Co.* (Ala.), 29 L. R. A., 120.—REPORTER.

Pioneer, etc., Loan Co. *v.* Cannon.

Cases cited and approved: Rogers *v.* Hargo, 92 Tenn., 35; 42 N. J. L., 635.

Cited and disapproved: 81 N. C., 56; 84 N. C., 38.

---

FROM SHELBY.

---

Appeal from Second Chancery Court of Shelby County. J. S. GALLOWAY, J., sitting by interchange.

FRANK POSTON for Loan Company.

MALONE & MALONE and J. J. DuBOSE for Cannon.

McALISTER, J. This is an action of ejectment to recover the possession of a tract of land comprising about twelve acres, situated near Memphis. The complainant is a building and loan association incorporated under the laws of the State of Minnesota, with its office and principal place of business at Minneapolis, in said State.

The record discloses that on July 25, 1890, the defendant, H. E. Cannon, a citizen of Memphis, made application to complainant association to purchase twenty-six shares of its stock, of the par value of two thousand six hundred dollars. The stock was accordingly issued, subject to the rules and regulations of the company. It further appears that

on. the twenty-ninth of July, 1890, the defendant, Cannon, made application to said company to borrow the sum of two thousand dollars. This application was forwarded to the home office of the company, at Minneapolis, and, after some delay, the application was granted. As evidence of this indebtedness Cannon and wife, September 1, 1890, executed their joint note to said company for the sum of two thousand dollars, payable seventy-six months after date. This note was dated and made payable at Minneapolis, and provided for the payment of five per cent. interest per annum, and five per cent. premium per annum, monthly, on or before the last Saturday of each month, and stipulating, further, that "any failure to pay interest or premium, when due, shall, at the election of the payee, make the principal, interest, and premium at once due." A provision of ten per cent. attorney's fee was also embraced in the note in the event default was made in the payment of the note.

For the purpose of securing the payment of this note at maturity, Cannon and wife executed a trust deed to one R. J. Black, conveying the twelve acres in question, and providing for the payment of the interest and premium evidenced by the note.

The trust deed further provided that "in case of any failure or default on the part of the parties of the first part to keep and perform any of the covenants or agreements herein contained, such failure or default shall, at the option of the holder of said

note, have the effect of at once maturing the whole indebtedness secured hereby,'' etc.

Cannon continued to pay his interest and premium until November 1, 1892, when he made default, and thereupon the company, in pursuance of the terms of the note, declared the whole indebtedness due, and directed a foreclosure of the deed of trust. The trustee, R. J. Black, after due advertisement, on January 27, 1894, offered the property for sale at public vendue, when the complainant, the Pioneer Savings & Loan Company, became the purchaser at the price of twelve hundred dollars. Cannon and wife, having refused to vacate the property, the present bill was filed to recover the possession. The Chancellor adjudged that the sale of the land to complainant was valid and communicated a good title, ordered a writ of possession to issue, and pronounced a personal decree against defendant in the sum of $1,134.98, balance due on the note after crediting same by amount bid at sale. Cannon appealed, and has assigned errors.

The first assignment of error is that complainant company is a nonresident corporation, and cannot maintain this action for the enforcement of property rights in this State, for the reason that at the time of these transactions it had not filed its charter with the Secretary of State and an abstract thereof in Shelby County, as required by the Act of 1891. It is a sufficient answer to this assignment of error to say that the original loan from the company to Cannon

was made September 1, 1890, and the trust deed to secure the loan was executed on the same day. This was prior to the passage of the Act of 1891, and, of course, said contract is not affected by the provisions of the latter Act. It is true the foreclosure of the trust deed and the purchase of the property by complainant occurred subsequently to the passage of said Act, but, the original transaction being valid, the mere collection of the debt is not within the prohibition of the statute.

The second assignment of error is that the note and mortgage were both usurious on their faces and nonenforcible. As already stated, the note stipulates on its face to pay five per cent. interest per annum and five per cent. premium per annum at the office of the company at Minneapolis, Minn. This contract is a Minnesota contract, and is expressly authorized by the charter of the company and the laws of that State, which have been distinctly proved, and appear on the record.

The third assignment is that the Court erred in not allowing defendant a credit of $1,108.06. It will be remembered that Cannon occupied towards this association a twofold relation—that of borrower and stockholder. The proof shows that Cannon, as debtor to the company, had paid on his loan note, in the way of interest and premium, the sum of $450, and that, as stockholder, he had paid on his stock the sum of $596.70.

In the decree pronounced by the Chancellor, Can-

non was credited with interest and premium paid up to November 1, 1892, amounting to $450, and charged with interest and premium accruing after that date. So that the only question under this assignment is whether defendant is also entitled to a credit on his loan note of stock payments made by him, amounting to $596.70.

The stock certificate issued by the company to Cannon provides that fines shall be imposed upon the shareholders upon default in payment of the dues, and if "such monthly, quarterly, and withdrawal installments, and all such interest, premium, and fines be not fully paid within ninety days after such first delinquency, this certificate shall wholly lapse, and this contract shall wholly cease, and become null and void as to any promise or obligation of the union, and all the payments made on this certificate shall thereupon be and become the absolute property of the union, and the union shall not be liable for any sum whatever under this certificate."

The certificate required the payment of monthly dues of sixty cents per share of stock held by the member, and each quarter a payment on dues of twenty-five cents per share, and for every month in which there are no quarterly dues a withdrawal payment of twenty-five cents per share, all of these dues being payable on the last Saturday in each month. Section 2 of the certificate provides for fines for nonpayment of these dues. By § 6 the borrower is required to pay interest at five per cent.

and a premium of five per cent. per annum on the loan. By § 11 of the by-laws, it is provided that the whole debt shall mature upon default in payment of the premium and interest. By § 6 the borrower is required to pay attorneys' fees.

The record shows that after October, 1892, Cannon wholly defaulted in payments of any kind, and thereafter, on June 29, 1893, the company declared the stock certificate lapsed and all payments made thereon forfeited to the union. These forfeited payments made by Cannon on his shares were credited on the books of the corporation to the lapsed share account, and were thereafter distributed among other stockholders in good standing. The question arising upon these facts is whether the stockholder in a building and loan association is entitled to apply stock payments as a credit upon a loan. In some jurisdictions such a transaction has been viewed as an actual loan of money, and the aggregate amount of payments upon stock as partial payments on the loan by the borrower. *Overby* v. *The Fayetteville Building & Loan Association*, 81 N. C., 56; 84 N. C., 38.

The Supreme Court of Alabama, however, in the case of *The Southern Building & Loan Association* v. *Anniston Loan & Trust Co.*, decided at its November term, 1893–94, says, viz.: "It is a correct principle, as has been held, that there is no connection established between the stock held by the stockholder and the bond (or note) held by the com-

pany, such as that payments made on stock are to be treated as payments on the bond, so that one is steadily offset against the other, or the one merges in the other—a fallacy sometimes indulged, arising from a failure to observe the separate existence of the stock, on the one hand, and the bond on the other; the separate relation borne to the company, on the one side by its stockholders, and on the other by its borrower. The payment on the one is not necessarily a payment on the other." Citing *State of Washington Building & Loan Association* v. *Hornbacker*, 42 N. J. L., 635; Endlich on Building Associations, § 452. After a review of the authorities, Mr. Endlich says: "It has, therefore, become a well-recognized doctrine that payments of dues upon stock are not payments to the mortgage debt, and do not, *ipso facto*, work an extinguishment of so much of the mortgage. The fact that the borrower has assigned his shares to the society as collateral security for his debt makes no difference, for this is a recognition of the distinct standing of the member as a member and as a debtor." Endlich on Building Associations, § 452. See, also, *Rogers* v. *Hargo*, 92 Tenn., 35.

The Chancellor held that defendant, Cannon, was not entitled to an abatement of his indebtedness by a credit for stock payments, which ruling was in accord with the established doctrine on the subject.

Affirmed.