Commission Company *v.* Carroll & McCallum.

*(Jackson.*    April 28, 1900.)

**1. Contract.**   *Not usurious, when.*

A contract is not *per se* usurious, but *prima facie* legal and valid, whereby a commission merchant and cotton factor agrees to furnish money to one engaged in buying and shipping cotton, upon consideration that the latter, in addition to the payment of the legal rate of interest, shall furnish and ship to the former for sale. on a commission of $1.25 per bale, one bale of cotton for each $100 advanced, or account for commission at that rate on that number of bales, whether furnished or not. To render such contract illegal, it must be shown that it was intended as a mere cloak for usury, and the burden of proving this fact is upon the party assailing the contract.    *(Post, pp. 490–500.)*

Cited and approved: 22 S. C.. 367; 9 S. C., 344; 64 Ala., 527; 59 Ark., 368; 93 U. S., 344; 90 F. R., 628; 16 F. R., 39; 27 N. Y., 146; 65 Ala., 511; 27 S. W. R., 246; 74 Ga., 595; 38 S. W. Rep., 148.

Cases cited and distinguished: Stark *v.* Sperry, 6 Lea, 415; Chester *v.* Apperson, 4 Heis., 639.

**2. Same.**   *Not presumed usurious.*

It will not be presumed, in the absence of proof of the usury laws of Missouri, that a Missouri contract, providing for the payment of eight per cent. interest, is illegal.    There is no presumption that the statutes of other States respecting penalties and forfeitures are like our own.    *(Post, pp. 499, 500.)*

Cases cited: Hubble *v.* Land Co.. 95 Tenn., 590; Cannon *v.* Pioneer, etc., Co., 96 Tenn., 603; Neal *v.* Association, 100 Tenn., 615.

**3. Same.**   *Of what State.*

That is *prima facie* a Missouri contract, under which a résident of that State contracts in that State to loan money to a citi-

Commission Company *v*. Carroll & McCallum.

zen of this State at eight per cent. interest, the money to be advanced and interest paid in Missouri. (*Post, pp. 499, 500.*)

FROM   CHESTER.

Appeal from Chancery Court of Chester County. A. G. HAWKINS, Ch.

C. G. BOND for Commission Company.

JOHN M. TAYLOR and F. M. OZIER for Carroll & McCallum.

McALISTER, J.   This cause is before the Court on the appeal of the complainant from the decree of the Chancellor sustaining the demurrer and dismissing the bill.   The allegations of the bill are that complainant is a corporation chartered and organized under the laws of Missouri, with its situs at St. Louis, in said State, and engaged in business as cotton factors and commission merchants.   The defendants are merchants engaged in business at Henderson, Chester County, Tenn., buying and shipping cotton.   In March, 1894, defendants applied by letter to complainants, asking for a line of credit to the amount of $3,000 or $4,000, to be used as they might need it between that time and September,

Commission Company *v.* Carroll & McCallum.

1894, promising to ship cotton to complainant, and, in case of failure to ship cotton, to pay commission on amount not shipped. It is alleged that defendants had previously dealt with complainants, and that the latter had advanced money to them on promise and agreement to pay $1.25 per bale for all cotton not shipped complainant during the current season. Complainant advanced money to defendants under an agreement they were to ship cotton to complainant at St. Louis, Mo., and for all cotton not shipped according to the money advanced, defendants were to pay complainants $1.25 per bale—that is to say, for every $1,000 advanced by complainant, defendants were to ship 100 bales of cotton. It is then charged that under this agreement defendants became indebted to complainants in the sum of $252.31 for cotton not shipped, and upon which complainant had advanced money as per itemized account filed with the bill.

Defendants demurred to this bill, assigning the following causes, to wit:

1. Because the nature and specific character of the alleged contract is not set out in the bill, and it is uncertain whether it is to buy cotton or was for the money loaned.

2. Because the bill does not show, as alleged, how much money was advanced, nor the dates and amounts, nor for what purpose.

3. Because the bill does not show the number of bales which defendants failed to ship, and the credit to which they would be further entitled unless shipped.

4. Because there is no contract set out in complainant's bill which is enforceable in a Court of Equity.

5. The bill is vague and indefinite as to the time of the commencement and maturity of the alleged contract, and does not show the same has matured.

6. No equity on face of bill.

7. That the alleged contract, if any, is illegal, and this Court will not lend its aid to enforce an illegal contract.

The Chancellor sustained the demurrer and dismissed the bill. It was the opinion of the Chancellor that such a contract as that disclosed in the bill is usurious, and hence illegal.

Complainant insists that under the authorities such a transaction is *prima facie* legal, although it may be made a mere cover for usury. Hence it is insisted the Chancellor was in error in dismissing the bill on demurrer, but should have required an answer.

The authorities relied on by complainant's counsel, as far as they are accessible, will be noticed. These cases rest on the general principle stated by the Supreme Court of Alabama, in *Uhlfelder*

*& Co.* v. *Carter,* 64 Ala., 527, viz.: There is another class of cases in which, in the usual course of business, money and individual services are employed, and when the real purpose is to promote the business, parties have been allowed to enter into contracts for the loan or advance of money or for the forbearance of an existing debt, engrafting upon the contract a stipulation that the debtor shall do some act by which such business will be increased, or if he makes default to pay such commissions as would have been earned if he had performed, citing *Pollard* v. *Baylor,* 6 Munf., 433.

In the case of *Blackburn* v. *Hayes,* 59 Ark., 368, that Court said:

"The evidence shows that Hardie & Co. were commission merchants in the city of New Orleans, engaged in the business of selling cotton on commission. They were engaged in a legitimate business, and had the right to loan their money, and at the same time to stipulate with the parties to whom it was loaned for the incidental advantage of acting as commission merchants for the sale of the cotton which the borrower was to be enabled to raise by the use of the money. The evidence shows that the appellants were cotton planters engaged in making cotton, and that the money advanced to them was loaned for the purpose of aiding them in this business. At the

time the contract to ship cotton was entered into, $1.25 per bale was the commission usually charged and received by commission merchants for selling cotton in the city of New Orleans, where the cotton was to be sold; and Hardie & Co. reasonably expected the cotton to be shipped to them. Under the circumstances, the contract was a valid agreement. It was, in effect, an agreement upon the part of appellants to ship the 200 bales in consideration of the undertaking of Hardie & Co. to sell the same, and in the sale thereof to use due care and skill, and that Hardie & Co. should be entitled to receive and recover the $1.25 per bale in the event appellants should fail to perform their contract, as liquidated damages sustained by them on account of the breach, and not as interest for the loan of the money."

In the case of *Norwood* v. *Faulkner,* 22 S. C., 367, Faulkner entered into a contract with Norwood & Co. to furnish him money and supplies to the amount of $2,500, and agreed, in addition to paying the stipulated interest, to ship Norwood & Co. 200 bales of cotton, or in default thereof to pay them $1.25 for each bale he should fail to ship. Faulkner paid the advances, but shipped only fifty-one bales of cotton, and refused to pay the commissions of $1.25 per bale on the 149 bales not shipped, claiming that the agreement was usurious. The Court said:

"It is incumbent, therefore, upon the defendant to show that the charge for commissions was for the hire, loan, or use of money or other commodities, and this we think he has not shown. If this was so, then the plaintiffs would be converted from factors and commission merchants into mere money lenders, and there is nothing in the evidence to warrant us in doing so. The object of the contract, so far as the plaintiffs were concerned, was not merely to secure a return of the money which they might advance, or the amounts which they might expend in the purchase of supplies shipped to the defendant, with interest on the same, but also to promote the business in which their capital was invested, and to which their personal services were devoted, besides the necessary outlays in the way of store · rent, clerk hire, etc. Hence the contract obliged the defendant to do two things: to refund the advances made to him, with interest, and to ship the stipulated amount of cotton to the plaintiffs, which they had prepared themselves to take charge of and sell, and in so doing had incurred expense, not only in loss of time, but in money actually paid out. The plaintiffs having thus engaged themselves in business as factors and commission merchants, would very naturally endeavor to take all lawful means of extending their business as such, and, therefore, they very naturally required that

the defendant should not only secure them the payment of any advance they might make, or the lawful interest thereon, but in order to forward their primary object, required the defendant also to ship them cotton, the main staple of their business."

In *Williams* v. *Vance & Moseley,* 9 S. C., 344, the Court said, viz.:

"The plaintiffs appear in the transaction as merchants, residing and doing business in Charleston, selling merchandise, making advances on cotton shipped them for sale, and making sales of cotton on commission. The defendants, Vance & Moseley, appear as merchants in the interior of the State, purchasing goods in Charleston for resale, and shipping cotton for sale through that city, taking cash advances on consignments of cotton for sale. The leading objects of the contract · on the part of the plaintiffs appear to be, first, to obtain security by way of mortgage for a past due debt by Vance & Moseley, individually, and another assumed by Vance & Moseley, but originally due from Vance, Moseley & Co., upon an extension of the time for the payment of such debts; second, to obtain security by way of mortgage for future sales of merchandise to Vance & Moseley on time, to a limited amount; third, to procure consignments of cotton from Vance & Moseley, to be sold on commission, they making cash advances, secured in part by mortgage.

Commission Company *v.* Carroll & McCallum.

"The next question arises on the language of the contract immediately following the agreement to consign 500 bales of cotton, which is as follows: 'And to pay, as liquidated damages, $2 for each and every bale of cotton less than 500 bales which they might fail to consign and ship to them as stipulated.' The right of parties to a contract to fix the amount of damages, in their nature unliquidated, by an agreed sum or rate of damages, is fully recognized by all the authorities."

In the case of *Cockle* v. *Flack,* 93 U. S., 344, it was held, viz.: "Where a commission merchant in Baltimore advanced to a pork packer in Peoria $100,000 for which he was to receive interest at the rate of ten per cent. per annum and a fixed commission from the sale of the product, to be paid whether it was sold by the commission merchant or not, it was properly left to the jury to decide on all the facts whether or not the commissions were a cover for usury or were an honest contract commission business in connection with the use of money." It was further said the express agreement of ten per cent. is not usurious because lawful in Illinois, though not in Maryland.

Defendants were to have interest on the money advanced at the rate of ten per cent. per annum. The product was to be shipped to them for sale,

and they were to have two and one-half per cent. commissions on the amount, if sold within sixty days, and one per cent. commission for every thirty days it was carried thereafter.

Said the Court, viz.: "But counsel for plaintiffs argue that as to these commissions which defendants never earned by sale of the property or by handling it, and as to which they were put to no cost or inconvenience, there can be no other consideration but the use of the money, and they are necessarily usurious. It must be confessed that the argument has much force. But we are of opinion that it is not so conclusive that the Court (below) ought to have held, as matter of law, that it was usury. While it was possible to make such a transaction a mere cover for usury, it was at the same time possible that the contract was a fair one in aid of defendants' business, a business in which they were actually and largely engaged, and in which lending money was the mere incident and not the main pursuit. It was therefore properly left to the jury to say whether, under all circumstances, it was or not a usurious transaction, under instructions to which we can see no objection." *Allen-West Com. Co.* v. *Patillo,* 90 Fed. Rep., 628; *Moore* v. *Lawrence,* 16 Fed. Rep., 39; *Smith* v. *Morris,* 27 N. Y., 146; *Dozier* v. *Mitchell,* 65 Ala., 511; *Huddleston* v. *Faulkner,* 21 S. W. Rep., 246; *Hollis* v. *Swift,* 74 Ga., 595; *Jarvis* v. *Southern Gro. Co.,* 38 S. W. Rep., 148.

Commission Company *v.* Carroll & McCallum.

It will be observed that in some of the cases cited the interest charged was ten per cent. and in others eight per cent., and it appeared that these particular rates of interest were not usurious or illegal in the places where the contract was made. Of course these cases are wholly inapplicable in this State, where such rates of interest are illegal. In the absence of an unlawful charge of interest, it is certainly true, as held in several of the cases cited, that where money is advanced to be invested in a particular product and shipped to the lender, or, on failure to do so, to pay the regular commission, and such contract is made in good faith and to induce the shipment of products to factors and commission merchants, it is not an unlawful transaction. If, however, it is a mere devise to evade the usury laws, the lender will be repelled. In *Stark & Hilliard* v. *Sperry,* 6 Lea, 415, it was held that a contract to pay two per cent. for sixty days as commissions on money advanced, in addition to legal interest, was a device to cover a usurious rate of interest, and therefore not recoverable. To the same effect is *Chester* v. *Apperson,* 4 Heis., 639.

In the present case, the account exhibited with the bill and the foundation of the suit shows on its face that the borrower is charged interest on the advances made at the rate of eight per

cent., in addition to the usual commissions, for a failure to ship the cotton. If this were a Tennessee contract, the usury appearing on the face of the bill would avoid the whole contract, but the place of performance of the contract does not distinctly appear. It is probably a Missouri contract, since the money advanced, the interest, and commission were *prima facie* payable in that State. It may be that eight per cent. is a lawful rate of interest in Missouri. There is no presumption that the statutes of other States respecting penalties and forfeitures are similar to our own. *Hubble* v. *Morristown Land Company,* 11 Pickle, 590. A contract which would be usurious in the State where it is sought to be enforced is not subject to the usury penalties of that State if it is not usurious under the law of the State where it was made. *Eastern Building & Loan Association* v. *Bedford,* 88 Fed. Rep., 7; *Cannon* v. *Pioneer Building Association,* 96 Tenn., 603; *Neal* v. *Building Association,* 100 Tenn., 615.

We cannot assume that this contract is usurious and void under the laws of the State of Missouri. We think, under the allegations of the bill, complainant makes out a case that requires an answer, and to that end the decree of the Chancellor is reversed and the cause remanded.