ERWIN NAT. BANK et al. v. RIDDLE et al.—79 S. W. (2d) 1032.

Eastern Section.   November 3, 1934.

Petition for Certiorari denied by Supreme Court, March 9, 1935.

R. W. H. Gilbert and Fred Baughman, both of Erwin, for appellants.

L. H. Allred and H. D. Erwin, both of Erwin, for appellees.

FAW, P. J. The original bill in this case was filed in the chancery court of Unicoi county, on August 25, 1932, by Erwin National Bank against N. D. Riddle, Gertrude Riddle, N. D. Riddle, Jr., Arthur C. Riddle, Frank E. Riddle, Charley H. Riddle, Mrs. Mamie Simmons, and Mrs. Bessie Mosteller. The complainant sued on behalf of itself and all other creditors of defendant N. D. Riddle.

Defendant Gertrude Riddle is the wife of defendant N. D. Riddle, and the other defendants named are children of said N. D. Riddle and Gertrude Riddle.

The main purposes of the bill were (1) to obtain judgments against defendants N. D. Riddle, Gertrude Riddle, and N. D. Riddle, Jr., for certain debts specified in the bill and alleged to be due and owing to the complainant bank by said three defendants; and (2) to obtain a decree of the court declaring a certain deed made by defendants N. D. Riddle and Gertrude Riddle, on May 1, 1931, to be voluntary, fraudulent, and void as against complainant bank and other creditors of N. D. Riddle and Gertrude Riddle, which deed purported to convey three certain described parcels of real estate in the town of Erwin, Unicoi county, Tenn., to N. D. Riddle, Jr., for the benefit of himself and the other children of N. D. Riddle and Gertrude Riddle, and to subject said real estate to the satisfaction of the aforesaid debts owing by said three defendants to complainant and all debts owing by said defendants to other creditors who might intervene by petition in this cause.

The bill contained a prayer appropriate to a general 'creditor's bill and a prayer for a receiver to take into his possession the property described in the bill. Complainant also prayed for general relief. Arthur C. Riddle, Frank E. Riddle, and Charley H. Riddle made no defense to the bill, and a judgment pro confesso was taken and entered against them.

N. D. Riddle, Gertrude Riddle, N. D. Riddle, Jr., Mrs. Mamie Simmons and Mrs. Bessie Mosteller filed a "joint answer" to the bill, in which answer they substantially admitted the indebtedness to complainant bank as alleged in the bill, and admitted the execution of the aforesaid deed by N. D. Riddle and Gertrude Riddle to their

codefendants on May 1, 1931, but they denied that said deed was executed for the purpose of delaying, hindering, and defeating their creditors, and particularly the complainant bank, in the collection of their debts, and denying all the material allegations of the bill to the effect that said deed was fraudulent in fact or in law.

Thereafter, a decretal order was made and entered in the cause as follows:

"This cause came on to be heard before Chancellor S. E. Miller, at his Chambers in Johnson City, Tennessee, on the 23rd day of September, 1932, upon the motion of complainant to have the bill sustained as a general creditors' bill and for the appointment of a receiver.

"The bill and answer thereto, together with certain exhibits proposed by the complainant, were read. Counsel were heard in favor of and in opposition to the motions, all of which, along with the pleadings were duly considered.

"It developed during the hearing that the defendant, N. D. Riddle, was willing, during the pendency of this cause, to secure the complainant on its debt by giving a deed of trust on a certain vacant lot which he claimed to be worth about $500, and also to hypothecate with complainant, as further security for the debt, a series of title retained notes against certain shoe-making or shoe-repairing machinery, the aggregate of said notes calling for about $500, and the Court being of opinion that this proposition, if carried out, would protect the complainant until the further hearing of this cause and render it unnecessary either to sustain the bill as a creditors' bill or to appoint a receiver, and the Court being of the opinion that a receiver was not necessary in any event, it is, therefore,

"Ordered that the motion for the appointment of a receiver be and the same is hereby denied; and further, that if the defendants carry out their proposal to secure the complainant with the lot and notes hereinabove referred to then this order may likewise be treated as an order overruling the motion to sustain the bill as a general creditors' bill. Pending the execution of proper trust deed to cover the land in question and the delivery of the notes to the complainant to secure its debt, the Court reserves the question as to sustaining the bill as a creditors' bill, but the complainant is allowed, without further notice to defendants, to renew its motion for sustaining the bill at any time after 10 days."

The defendants did not "carry out their proposal to secure the complainant," as recited in the foregoing order of the court, but it does not appear that the complainant thereafter renewed its motion to sustain the bill as a general creditors' bill, and the cause proceeded as a suit on behalf of the original complainant, Erwin National Bank, and an intervening petitioner presently to be mentioned.

On October 7, 1932, the State-Planters' Bank & Trust Company, a

Virginia corporation, filed, by leave of the court, its intervening petition alleging that it is a bona fide creditor of defendants N. D. Riddle and Gertrude Riddle; that on August 1, 1927, N. D. Riddle and wife, Gertrude Riddle, borrowed the sum of $4,000, evidenced by their joint negotiable promissory note of that date, payable to bearer, on August 1, 1932, along with which they executed certain coupons representing semiannual interest installments, and for value received, and before maturity of said note, petitioner purchased the same, and is now the owner of said note and a coupon note for $120 representing the interest due on said principal note on August 1, 1932, for six months immediately preceding said maturity date; that after giving credit for all payments made on said note, there was due thereon, as of April 15, 1932, a balance of $2,425.72, which amount is now due, owing, and unpaid, together with interest on said sum from April 15, 1932, and 10 per cent. attorney's fees as provided for in the face of said note; and that, in addition to the above, there is also due petitioner the sum of $120 on account of semiannual interest due on August 1, 1932.

The said intervening petitioner joined in and adopted the averments of complainant's original bill that said Riddles are insolvent, and have no property of sufficient monetary value with which to meet their just obligations, and also all the averments of the original bill with respect to the alleged voluntary conveyance made by N. D. Riddle and wife to their children, and the petitioner alleged that when said deed was executed, said grantors, to all practical purposes, thereby denuded themselves of all or virtually all of their property and left nothing, or certainly nothing of substantial value, out of which to make good their just obligations to their creditors.

Defendants N. D. Riddle and Gertrude Riddle demurred to the aforesaid petition of the State-Planters' Bank & Trust Company, but the chancellor overruled the demurrer, and the five defendants who had answered the original bill, as before stated, also filed an answer to said intervening petition, in which answer they denied that N. D. Riddle and Gertrude Riddle, or any of the respondents, owed the petitioner anything. They admitted that, on or about August 1, 1927, N. D. Riddle and wife, Gertrude Riddle, borrowed $4,000 from the petitioner and executed the notes referred to in the petition, and, to secure the payment of the same, executed the trust deed as alleged; but said respondents alleged that the petitioner State-Planters' Bank & Trust Company is a foreign corporation and has never complied with the laws of Tennessee authorizing foreign corporations to do business in Tennessee, and that one E. T. Campbell, representing the petitioner, induced defendants N. D. Riddle and wife to borrow from said foreign corporation said sum of $4,000, and to secure the payment thereof by a deed of trust on the real estate referred to in said petition; that said property was sold under said trust deed after

a number of payments had been made on said $4,000 loan, and, at said sale, the petitioner purchased said real estate at a bid of about $2,000; that, at the time of said loan, petitioner, a foreign corporation, was doing business in Unicoi county, Tenn., having agents in said county soliciting business for and in its behalf, and that it not only loaned said money to respondents N. D. Riddle and wife, but made numerous other loans to citizens of Unicoi county and perhaps to citizens in other counties of Tennessee, and did such business as the laws of Tennessee authorized domestic corporations to do, and yet never complied with the laws of Tennessee respecting foreign corporations doing business in Tennessee, and that petitioner therefore has no standing before the courts of Tennessee for the enforcement of its rights and should be repelled; that petitioner has by said unjust, unlawful, and fraudulent devices not only obtained numerous payments on said loan, but during the period of the depression took advantage of the respondents N. D. Riddle and wife, advertised their said realty, bidding it in at said sum of $2,000, when it was worth at least $12,000.

Defendants also referred to and adopted, for further answer, that part of the original bill relating to the execution of the said deed of May 1, 1931, by which N. D. Riddle and Gertrude Riddle conveyed to their children the real property in the town of Erwin described in the original bill of Erwin National Bank herein.

On July 12, 1933, the five defendants who had previously answered the original bill and the intervening petition, as before stated, filed, upon leave granted, an amendment to their aforesaid answers, in and by which amendment they amplified, at considerable length, their previous answers, and, among other things, denied that the debts owing to complainant Erwin National Bank were "existing debts" at the time of the execution of the aforesaid deed of May 1, 1931. Defendant Gertrude Riddle also denied (contrary to her former admission) that she is, or was ever at any time, indebted to the petitioner State-Planters' Bank & Trust Company.

More particular reference to certain parts of the pleadings pertinent to the issues presented in this court may be made when we come to dispose of the assignments of error of the appellants.

A considerable volume of proof, in the form of depositions and exhibits thereto, was taken and filed on behalf of the parties, respectively, and the cause was thereafter heard by the chancellor, and a decree was pronounced and entered on September 5, 1933, as follows:

"This cause of the complainant, and that of State-Planters Bank & Trust Company, an intervening petitioner, against the defendants came on to be heard on a former date, in vacation, as by agreement in term time, before Hon. S. E. Miller, Chancellor, at Chambers, in Johnson City, Tennessee, upon the bill, the intervening petition, the answer and supplemental answer, the proof and exhibits, the record

at large, and the argument of counsel, after which the Chancellor took the same under advisement; and now on this Sept. 5, 1933, after consideration of the same, the Court is of the opinion and so finds:

"I. That the defendants N. D. Riddle, Jr., and N. D. Riddle, Sr., and Gertrude Riddle, are jointly and severally indebted to the complainant in the sum of Two Hundred and one ($201.95) and 95/100 dollars, with interest on said sum from June 27, 1932, and that the defendants, N. D. Riddle and Gertrude Riddle, are jointly and severally indebted to the complainant in the sum of Five Hundred fifty-four and 90/100 ($554.90) dollars, with interest on said sum from June 27, 1932, and also the costs incurred in the Court below as well as the costs of this cause.

"II. That the defendants, N. D. Riddle, Sr., and Gertrude Riddle, are also jointly and severally indebted to State-Planters Bank & Trust Company, the intervening petitioner, on account of a deficiency claim against them on their negotiable promissory notes secured by deed of trust which has been foreclosed; and it appearing to the Court that at the foreclosure sale the petitioner became the purchaser of the property conveyed to secure said debt, at a sum less than its fair cash value and that it would be inequitable, in the circumstances, to permit a recovery of the entire amount sued for, and that twelve hundred and fifty ($1250) dollars would be a just amount to allow, and the Court suggested to the Bank that it reduce its claim accordingly, to which the Bank agreed, and the Court is of the opinion that the intervening petitioner, State-Planters Bank & Trust Company, is entitled to recover of the defendants, N. D. Riddle and Gertrude Riddle, $1250, in lieu of the amount claimed and sued for, in full discharge and satisfaction of its deficiency claim against said defendants. The Court is further of the opinion that the property hereinafter described should be impressed with a lien for the several amounts found to be owing.

"III. And it further appearing to the Court that the defendants, N. D. Riddle and Gertrude Riddle, while indebted to the complainants and petitioner in the respective amounts just named transferred and conveyed to their co-defendants, N. D. Riddle, Jr., and for the use of N. D. Riddle, Jr., Arthur C. Riddle, Frank E. Riddle, Charley H. Riddle, Mamie Simmons, and Bessie Mosteller, the several parcels of real estate described in the original bill, with intent to hinder and delay the complainant and petitioner in the collection of their said debts, the defendants, well knowing the intent and purpose of said conveyance, and the Court is of the opinion that said pretended sale, transfer and conveyance is fraudulent, null and void, as against the complainant, Erwin National Bank, and the petitioner, State-Planters Bank & Trust Company, as aforesaid.

"It is, therefore, considered, ordered, adjudged and decreed, by the Court, that the complainant have and recover of the defendants,

N. D. Riddle, Jr., and N. D. Riddle, Sr., and Gertrude Riddle, jointly and severally, the sum of Two Hundred and one and 95/100 ($201.95) dollars, with interest on said sum from June 27, 1932. And that the complainant have and recover of the defendants, N. D. Riddle and Gertrude Riddle, jointly and severally, the sum of Five Hundred and fifty-four and 90/100 ($554.90) dollars, with interest on said sum from June 27, 1932.

"IV. It is further considered, ordered, adjudged and decreed by the Court, that the intervening petitioner, State-Planters Bank & Trust Company, have and recover of the defendants, N. D. Riddle and Gertrude Riddle, jointly and severally, the sum of Twelve Hundred and fifty ($1250.00) dollars, with interest on said sum from date of this decree, said recovery to be in lieu of all other sums sued for or claimed. All costs of this cause, including the costs incurred in the magistrate's court, will be taxed against the defendants, N. D. Riddle, Jr., N. D. Riddle, Sr., and Gertrude Riddle, for which an execution is awarded. And a lien is declared on the property in question in favor of said several recoveries.

"It is, further, ordered, adjudged and decreed by the Court, that unless the recoveries herein granted be paid within 75 days the real estate covered by said fraudulent conveyance, to-wit (here follows a description by location, metes and bounds of the three parcels of real estate described in the original bill and in said deed of May 1, 1931), be sold on a credit of six, twelve and eighteen months, and in bar of dower, homestead and the equity of redemption, the complainant and petitioner so praying in their bill and petition, and now at the bar of the Court; that out of the proceeds of such sale, when confirmed, there be paid, first, the costs of this cause, second, the amount of the several amounts herein decreed to the complainant and petitioner pari passu, with interest to date of payment, and third, the balance, if any, to the defendants according to their respective interests.

"If, however, the proceeds of said sale shall be insufficient to satisfy this decree, an execution will issue against defendants N. D. Riddle, Jr., N. D. Riddle, Sr., and Gertrude Riddle for the residue.

"The Clerk and Master will make report of said sale for confirmation or rejection.

"In so far as the foregoing decree is adverse to the rights, contentions and insistences of the defendants, each and all of them, they there and then excepted and now except and from so much of said decree as adjudges a recovery in favor of State-Planters Bank & Trust Company, and from that part of the decree setting aside said transfer and conveyance as fraudulent, and ordering a sale of the said real estate, the defendants pray an appeal to the next term of the Court of Appeals, at Knoxville, which convenes on the 1 Monday in January, 1934, which appeal is allowed upon defendants giving

a sufficient appeal bond as required by law and 30 days are allowed in which to file said bond.''

By an order of the court subsequently and seasonably made, the aforesaid decree was amended so as to permit the appellants to prosecute their appeal by taking the pauper oath in lieu of an appeal bond, and such oath was filed by N. D. Riddle, Gertrude Riddle, N. D. Riddle, Jr., Mrs. Mamie Simmons, and Mrs. Bessie Mosteller.

The appellants have filed six assignments of error in this court, to which we will now respond in the order of their assignment.

1. Appellants say that: ''The Chancellor erred in holding that the deed from the Erwin Shoe and Harness Company, dated May 7, 1912, to Gertrude Riddle during her natural life and on her death to N. D. Riddle and their heirs, did not vest title in N. D. Riddle, Jr., Arthur C. Riddle, Charley H. Riddle, Frank E. Riddle, Mrs. Bessie Mosteller and Mrs. Mamie Simmons, children of said Gertrude Riddle and N. D. Riddle, Sr., as tenants in common with N. D. Riddle, Sr.''

One of the defenses asserted by the defendants below was that the title to six-sevenths of ''Tract No. 2—Being one-half of lots Nos. 13 and 14, section 2, of Allen Addition to the town of Erwin, Tennessee,'' as described in the original bill in this case and in the deed of May 1, 1931, made by N. D. Riddle and Gertrude Riddle to their six children, was vested in the children of N. D. Riddle and Gertrude Riddle by virtue of a deed executed by the Erwin Shoe & Harness Company, a Tennessee corporation, on May 7, 1912. In other words, it was claimed by the five answering defendants (to whom we will hereinafter refer as the defendants) that at the time the deed of May 1, 1931 (which is assailed, as voluntary and fraudulent, by the original complainant and the intervening petitioner), was executed, defendant Gertrude Riddle owned only a life estate in said tract No. 2 and defendant N. D. Riddle, Sr., owned only an undivided one-seventh interest in remainder therein; the remaining six-sevenths undivided interest in remainder belonging to their six children and codefendants.

In support of their contention just stated, defendants relied upon a deed executed and acknowledged for registration by the Erwin Shoe & Harness Company on May 7, 1912, and registered in the register's office of Unicoi county on November 15, 1915, which deed is, in words and figures, as follows:

''For and in consideration of the sum of Two Thousand Dollars, cash in hand paid by Gertrude Riddle at and before the ensealing and delivery of these presents, the receipt of which is hereby acknowledged, the Erwin Shoe and Harness Company, a Corporation organized under the laws of the State of Tennessee, with head office at Erwin in said State, have bargained and sold, and by these

presents do transfer and convey unto the said Gertrude Riddle during her natural life and at her death to N. D. Riddle and their heirs and assigns, a certain tract or parcel of land in Unicoi County, State of Tennessee, as follows:

"Lying and being in the town of Erwin, Tennessee, and more particularly described as follows, to-wit:

"Being all of lots (13) and (14) in section two (2) of the Allen Addition to said town of Erwin, both together fronting Eighty Eight (88) feet on the west line of Second street, and running back between parallel lines to an Alley in the rear, and being the same two lots conveyed to the Erwin Shoe and Harness Co., by J. S. Boone and wife Mary Boone and Paul Boone and wife Grace Boone on the 2nd day of December, 1911, and which deed is of record in the Register's Office for Unicoi County, at Erwin in Volume 15, pages 385 to 387.

"To have and to hold the said tract or parcel of land, with the appurtenances, estate, title, and interest thereto belonging, to the said Gertrude Riddle during her natural life and at her death to N. D. Riddle their heirs and assigns, forever. And we do covenant with the said Gertrude Riddle that we are lawfully seized and possessed of said land in fee simple; have a good right to convey it, and the same is unincumbered.

"And we do further covenant and bind ourselves and our heirs and representatives, to warrant and forever defend the title to said land to the said Gertrude Riddle and N. D. Riddle heirs and assigns, against the lawful claims of all persons whomsoever.

"Witness our hands, this 7th day of May, 1912."

Appellants insist that the word "heirs," as used in the premises (or conveying clause) and in the tenendum and habendum clause of said deed, should be construed as meaning "children;" and that the conveyance was made to Gertrude Riddle for the term of her natural life, with remainder in fee simple to N. D. Riddle and the children of said Gertrude and N. D. Riddle as tenants in common.

We do not think that the word "heirs," as used in this deed, means "children." "The word 'heirs' is a technical word, and is always construed to be a word of limitation and not of purchase, unless there be other controlling words clearly showing that a contrary meaning was intended by its use," and the word "children" "is also a technical word, and is always construed to be a word of purchase, unless it be so controlled by other words used as to show that it was intended as a word of limitation." Kay v. Connor, 8 Humph., 624, 633, 49 Am. Dec., 690. See to same effect, Graves v. Graves, 3 Tenn. App., 439, 442.

There is nothing in the conveyance here under consideration which indicates that the word "heirs," as used therein, was intended to mean children. We do not think that it could be so inferred from

the language purporting to convey the property to Gertrude Riddle "during her natural life."

If the limitation to the "assigns" of Gertrude Riddle and N. D. Riddle had been omitted from the deed, we think that Gertrude Riddle would have taken an estate for her life, and N. D. Riddle would have taken a vested remainder in fee. In such event, it might *possibly* have been a proper subject of inquiry as to whether N. D. Riddle would have taken the whole estate in remainder or an undivided interest as a tenant in common with those persons who, on the termination of the life estate of Gertrude Riddle, answered to the description of her heirs. The result of such inquiry would have depended upon the application or nonapplication to the deed in question of section 3674, Shannon's Code (Code 1932, sec. 7600), abolishing the Rule in Shelley's Case, which section reads as follows:

"Where a remainder is limited to the heirs or to the heirs of the body of a person, to whom a life estate in the same premises is given, the persons who, on the termination of the life estate, are heirs or heirs of body of such tenant, shall take as purchasers, by virtue of the remainder so limited to them."

But to pursue the inquiry just suggested would, we think, be a fruitless quest, for the reason that the use of the word "assigns," both in the granting clause and the habendum of the deed here in question, imports an intention to give the grantees the power to transfer and convey the property described in the deed. Teague v. Sowder, 121 Tenn., 132, 158, 159, 114 S. W., 484; Travis v. Sitz, 135 Tenn., 156, 184, 185 S. W., 1075, L. R. A., 1917A, 671; Graves v. Graves, 3 Tenn. App., 439, 442; Goetz v. Ballou, 64 Hun, 490, 19 N. Y. Supp., 433, 434; Johnson v. Morton, 28 Tex. Civ. App., 296, 67 S. W., 790, 791.

In Goetz v. Ballou, supra, the court said:

"It seems to us that the use of the word 'assigns' in the devise to the plaintiff amounts to a grant of a power to dispose of the remainder. The expression 'to her heirs and assigns forever' must be construed as an absolute gift to her, notwithstanding the apparent words of limitation as to life, contained in the preceding part of this section of the will."

In Johnson v. Morton, supra, the court said:

"It is contended by appellant that the trial court erred in construing the several deeds as vesting the fee in the respective grantees therein named, and in not holding that the grantee took a life estate, only, in the land. The granting clause of the deeds reads: 'Have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said Joseph A. Morton and Merrill Morton . . . during their natural life, and after their death to their heirs and assigns.' The habendum clause reads: 'To have and to hold the above-granted premises, together with, all and singular, the

rights and appurtenances thereto in any wise belonging, unto the said Joseph A. Morton and Merrill Morton during their natural lifetime, and after their death to their heirs and assigns, forever.'

. . .

"It will be seen by reference to the deeds that immediately following the word 'heirs' in the granting clause, and also in the habendum clause, appears the word 'assigns.' This word is inconsistent with the intention on the part of the grantors that the grantee should take only a life estate. The word 'assigns' evidences the intention on the part of the grantors to give the grantee power to sell and dispose of the property."

It is settled by a long line of decisions in this state that, if the first taker (under a will or deed) is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void. Smith v. Bell, Mart. & Y., 302, 305, 17 Am. Dec., 798; Sevier v. Brown, 2 Swan, 112, 116; Ballentine v. Spear, 2 Baxt., 269, 273; Bradley v. Carnes, 94 Tenn., 27, 30, 27 S. W., 1007, 45 Am. St. Rep., 696; Brien v. Robinson, 102 Tenn., 157, 168, 52 S. W., 802; Ogilvie v. Wright, 140 Tenn., 114, 203 S. W., 753; Eaton v. Nashville Trust Co., 145 Tenn., 575, 578, 238 S. W., 865; Breeden v. Welker, 2 Tenn. Ch. App., 109; Remke v. Remke, 11 Tenn. App., 301, 313; Vandeventer v. McMullen, 157 Tenn., 571, 573, 11 S. W. (2d), 867; Waller v. Sproles, 160 Tenn., 11, 18, 22 S. W. (2d), 4.

This rule has become a rule of property in this state. Waller v. Sproles, supra, 160 Tenn., 11, 18, 22 S. W. (2d), 4.

And it is held that "such power may be given, not only by express words, but by words necessarily implying an unlimited power of disposition." Eaton v. Nashville Trust Co., supra, page 578, 145 Tenn., 238 S. W., 865; Bradley v. Carnes, supra, page 31 of 94 Tenn., 27 S. W., 1007.

For the reasons stated, we are of the opinion that the aforesaid deed of May 7, 1912, vested Gertrude Riddle and N. D. Riddle with an absolute power of disposal of the property described therein, and hence with the title in fee simple thereto. Appellants' first assignment of error is overruled.

2. The appellants' second assignment is that: "The Chancellor erred in allowing the State-Planters Bank & Trust Company to recover, because said Bank is a foreign corporation, having entered this State through its agents and representatives and engaging in the prosecution of their ordinary business therein, without ever complying with the laws of Tennessee relative to domestication of foreign corporations."

It is well settled that foreign corporations have no right to do business in this state without first complying with the provisions of our statutes (Code 1932, sec. 4118 et seq.) with reference

to the filing of their charters in this state, etc., and, if they engage in business in this state without first complying with these statutes, our courts will not aid them in the enforcement of their contracts. Equitable Trust Co. v. Central Trust Co., 145 Tenn., 148, 171, 239 S. W., 171. Therefore, the question presented by appellants' second assignment of error is whether the State-Planters' Bank & Trust Company was doing business in Tennessee at the time of its transactions with N. D. Riddle and Gertrude Riddle involved in this case.

The State-Planters' Bank & Trust Company (which, for the sake of brevity and to distinguish it from the complainant Erwin National Bank, we will refer to as the Trust Company) is a Virginia corporation, engaged in the business of ''underwriting first mortgage loans for sale investors'' with its situs in the city of Richmond, Va.

In July, 1927, N. D. Riddle, then a resident of the town of Erwin, Tennessee, pursuant to negotiations with one E. T. Campbell, also a resident of Erwin, signed an application to the petitioner Trust Company for a loan of $5,000, to be secured by a first mortgage or trust deed on a certain lot, with a brick apartment house thereon, in the town of Erwin, which application was mailed by Campbell to the Trust Company at its office in Richmond, Virginia, and was there approved and accepted by the Trust Company upon conditions stated in its written acceptance which manifestly contemplated that all acts to be done by the Trust Company in connection with the loan should be done at Richmond, Virginia. Thereupon, defendants N. D. Riddle and Gertrude Riddle executed notes aggregating $5,000, payable to ''Bearer at the office of the State-Planters' Bank & Trust Company in the city of Richmond, Virginia,'' and a trust deed to secure same, conveying the aforesaid town lot in the town of Erwin to David B. Harris and Tristram T. Hyde, Jr., both of the city of Richmond, Virginia. The notes and trust deed, together with an abstract of title to the property involved, were forwarded to the Trust Company at Richmond for examination by its attorney, by whom they were approved, and the proceeds of the loan were disbursed by the Trust Company at Richmond, by the acceptance and payment of drafts drawn on it by N. D. Riddle.

E. T. Campbell conducted an insurance and real estate business at Erwin, and also acted as a loan broker in negotiation of loans on real estate security in the town of Erwin. Throughout a period of several months, he (E. T. Campbell) negotiated approximately twelve loans made by the Trust Company on Erwin real estate, but he was not an agent or representative of the Trust Company. He was not employed by it, was not authorized to bind it in any way, and his compensation, as well as all other expenses payable to persons at Erwin, were paid by the borrower.

Upon the foregoing facts, it is clear, we think, that the contract

between the Trust Company and the Riddles was not a Tennessee contract, but was a Virginia contract. Lloyd Thomas Co. v. Grosvenor, 144 Tenn., 347, 355, 233 S. W., 669; Pioneer, etc., Loan Co. v. Cannon, 96 Tenn., 599, 603, 36 S. W., 386, 33 L. R. A., 112, 54 Am. St. Rep., 858; Commission Co. v. Carroll & McCallum, 104 Tenn., 489, 500, 58 S. W., 314.

We also find that the Trust Company was not doing business in Tennessee, within the contemplation of the foreign corporation laws of this state, at the time of its said transactions with the Riddles. Norton v. Union Bank & Trust Co. (Tenn. Ch. App.), 46 S. W., 544; Holston National Bank v. Missionary Society, 11 Tenn. App., 72, 79.

It was expressly held in Norton v. Union Bank & Trust Co., supra, that a foreign corporation, having no agent or place of business within this state, which loaned money on applications sent to it by loan brokers who were agents of the borrowers, was not doing business of loaning money in this state, within the meaning of the Tennessee statutes prohibiting foreign corporations which had not complied with the laws of this state from carrying on the business of loaning money therein, and that notes and mortgages so taken by foreign corporations might be enforced in the courts of this state; and the opinion of the Court of Chancery Appeals in that case was affirmed by the Supreme Court. The holding of the Eastern Section of this court in the case of Holston National Bank v. Missionary Society, supra, was to the same effect, and a petition for certiorari was denied by the Supreme Court in the latter case. In purchasing the mortgaged property at the foreclosure sale, and thereafter holding it, the Trust Company was not doing business in Tennessee in violation of our statutes. Pioneer, etc., Loan Co. v. Cannon, supra, page 603 of 96 Tenn., 36 S. W., 386; Louisville Property Co. v. Nashville, 114 Tenn., 213, 84 S. W., 810. Appellants' second assignment of error is overruled.

3. Appellants' third assignment of error is as follows: "The Chancellor erred in allowing the State-Planters' Bank & Trust Company to recover a deficiency judgment in this case, because it is of record in this cause that the property securing the indebtedness to the Bank was appraised at $13,000 when the loan was made. It is of record that the said property mortgaged to the State-Planters' Bank & Trust Company was assessed at $2500 in 1932 and that it was the custom of the authorities to assess real estate at 50% of its value; therefore at the time of the foreclosure the property was reasonably worth $5000, even in times when there was no market for real estate in Erwin."

The Trust Company was the highest bidder, and the purchaser, at the foreclosure sale of the property in question, at the price of $2,000, and, after crediting the net sum thus realized, together with payments previously made, there was an unpaid balance of $2,425.72

on the notes executed by the Riddles and secured by the trust deed, for which latter sum the Trust Company sought, in its petition, a judgment against N. D. Riddle and Gertrude Riddle; but, at the final hearing, the Trust Company, upon the suggestion of the chancellor, agreed to reduce its claim for a deficiency judgment to $1,250, and decree was rendered accordingly. This was equivalent to an increase of the purchase price paid by the Trust Company to the sum of $3,175.72.

It is true that, at the time the loan was made in the year of 1927, appraisers fixed the value of the property in question at $13,000; but there was a very great "slump" in real estate values in the town of Erwin between that date and the date of the foreclosure sale in 1932, and we think it is shown by a clear preponderance of the testimony of competent and disinterested witnesses that the cash market value of the property at the time of the foreclosure sale was not more than $3,500. Some of the witnesses placed it at $2,500. The record does not show any fraud or oppression on the part of the Trust Company, or any one else, with respect to the conduct of the foreclosure sale. The decree of the chancellor operates to give the Riddles credit for the approximate value of the mortgaged property, and the third assignment of error is overruled.

4. The next assignment of appellants is that: "The Chancellor erred in holding that the conveyance by N. D. Riddle, Sr., and wife, Gertrude Riddle, to N. D. Riddle, Jr., and other children, dated May 1, 1931, was fraudulent and null and void, and the indebtedness allowed to be impressed on said property as a lien."

The deed executed on May 1, 1931, by N. D. Riddle and Gertrude Riddle to their children was made without consideration. It was a purely voluntary conveyance by parents to their children. N. D. Riddle, one of the grantors, had the deed recorded, and after it was recorded, retained it in his possession. The grantees did not know of the conveyance at the time it was executed and recorded. The grantors remained in possession of the property—the deed purporting to reserve to them a life estate therein.

Said deed, if valid, divested N. D. Riddle and Gertrude Riddle of title to all the real estate of any substantial value owned by them at the time of its execution, except the property mortgaged to secure the debt due the State-Planters' Bank & Trust Company, which, as before stated, was insufficient in value to pay the debt for which it was mortgaged.

Defendants N. D. Riddle and Gertrude Riddle, or one of them, owned and operated a store for the sale of shoes, and had on hand therein a stock of shoes which, shortly after the execution of said deed of May 1, 1931, was sold by them to a merchant in Abingdon, Virginia, for $2,000, and removed by the purchaser from the state

of Tennessee. The sale of said merchandise was made without notice to creditors as required by the Tennessee Bulk Sales Law (Code 1932, sec. 7283 et seq.). It should be stated, however, that according to the undisputed testimony of N. D. Riddle he applied the $2,000 received for the stock of shoes to the payment of his mercantile creditors; but the conveyance of their real estate to their children, and the sale of their stock of shoes, denuded defendants N. D. Riddle and Gertrude Riddle of all their property of substantial value subject to execution at law, and left unpaid debts owing by them to complainant bank of approximately $800, an insufficiently secured debt approximating $4,000 (upon which the chancellor has rendered a deficiency judgment of $1,250 after the exhaustion of the security) to the State-Planters' Bank & Trust Company, and also debts to other parties aggregating approximately $500, as disclosed by the record.

It is provided by section 2, subsection 1, of the Uniform Fraudulent Conveyance Act of 1919 (Pub. Acts 1919, ch. 125), that "a person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

Tested by the above-quoted definition, N. D. Riddle and Gertrude Riddle were rendered insolvent by the aforesaid conveyance of their real estate to their children on May 1, 1931.

It is further provided by the Uniform Fraudulent Conveyance Act (section 4) that "every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

It is said on behalf of defendants that the debts owed by defendants N. D. Riddle and Gertrude Riddle to complainant bank, at the time the bill in this case was filed, were not "existing debts" when the deed in controversy was executed on May 1, 1931, for the reason that the notes held by complainant bank when the bill was filed were renewals of the notes held by the bank at the time of the execution of said deed. We do not think there is any merit in this contention. A renewal note does not operate to discharge the note in renewal of which it is given, unless there is an agreement that it shall have that effect. First National Bank v. Yowell, 155 Tenn., 430, 294 S. W., 1101, 52 A. L. R., 1411. No such agreement appears in the instant case.

The above-stated ruling in First National Bank v. Yowell, supra, is in accord with the well-established rule in other jurisdictions. See Annotation, 52 A. L. R., 1417.

We are also of the opinion that the facts and circumstances disclosed by the record show that it was the intent and purpose of

N. D. Riddle and Gertrude Riddle to place their property beyond the reach of their creditors by the aforesaid deed to their children; and we concur in the finding of the chancellor that said deed was made by N. D. Riddle and Gertrude Riddle with intent to hinder and delay the complainant bank and the petitioner Trust Company in the collection of their said debts, and that said deed was fraudulent, null, and void as against the complainant bank and petitioner Trust Company.

5. The next assignment of error is that: "The Chancellor erred in holding that Gertrude Riddle was indebted to the State-Planters' Bank & Trust Company upon the notes and by the deed of trust to said Bank by N. D. Riddle." N. D. Riddle and Gertrude Riddle were joint makers of all of the notes executed for the loan in question made by the Trust Company. The promissory words in the principal notes were, "the undersigned promises to pay," etc., and in the semiannual interest notes the promissory words were, "I promise to pay," etc.

N. D. Riddle and Gertrude Riddle were "the undersigned," in the principal notes, and it is provided by section 17, subsec. 7, of the Negotiable Instruments Law (Acts 1899, ch. 94), that "where an instrument containing the words, 'I promise to pay,' is signed by two or more persons, they are deemed to be jointly and severally liable thereon."

In their original answer (filed December 27, 1932) to the petition of the Trust Company, defendants N. D. Riddle and Gertrude Riddle admitted that they executed the notes referred to in said petition, and that, to secure the payment of same, they executed the trust deed as alleged in the petition. At that time they made no claim that said notes and trust deed were not binding obligations on Gertrude Riddle, except in so far as such denial of liability was implied by the assertion that the Trust Company had not complied with the Tennessee statutes regulating the right of foreign corporations to do business in Tennessee.

But in the amended answer of defendants, filed on July 12, 1933, defendant Gertrude Riddle alleges in substance that, at the time she signed said notes, the "representative" of the Trust Company told her that her signature to the notes would not obligate her in any way, but that, as she was N. D. Riddle's wife, "it makes it law" that she sign the notes.

In the testimony of Gertrude Riddle it developed that the person to whom she referred in her answer as the "representative" of the Trust Company was the aforementioned E. T. Campbell, and, as we have already held, the proof shows that E. T. Campbell was not the agent or "representative" of the Trust Company, and any representations he may have made were not binding on the Trust Company. E. T. Campbell had removed from Erwin and his whereabouts were unknown at the time the proof was taken in this case.

Gertrude Riddle also testified that she did not acknowledge the trust deed in question freely and voluntarily, and that she told W. H. Logan, the notary public who took her acknowledgment thereto, that she would not do so. In this statement she is directly contradicted by the testimony of the notary public, W. H. Logan, who states that she (Gertrude Riddle) did not offer or indicate any objection whatever to the execution and acknowledgment by her of said trust deed, and that he (Logan) took her acknowledgment, separately and apart from her husband, in the usual way by asking her the questions embraced in his certificate, and that she answered the questions in the manner stated in his certificate without discussion or protest.

N. D. Riddle testified that he was present when the notary public, W. H. Logan, took his wife's acknowledgment to said trust deed, but in this he is also directly contradicted by W. H. Logan.

The probate of a married woman's deed by an officer authorized to take such acknowledgments is regarded as the solemn act of a sworn officer of the law, quasi judicial in its nature, and should be given very great weight as to every statement contained in the officer's certificate, when the certificate is written in the form required by law. It should not be overturned except upon the clearest and most convincing evidence, and the unsupported testimony of the husband and wife will not be permitted to overturn the statements of the certificate as to the fact that the privy examination of the wife was properly taken. Thompson v. Southern B. & L. Association (Tenn. Ch. App.), 37 S. W., 704, affirmed by Supreme Court; Shell v. Holston National B. & L. Association (Tenn. Ch. App.), 52 S. W., 909, 911, affirmed by Supreme Court; Grotenkemper v. Carver, 9 Lea, 280. And a fortiori this is true where the certificate is supported by the testimony of the probating officer at the trial, as in the instant case.

6. The next (and last) assignment of error is that: "The Chancellor erred in admitting as evidence on behalf of the State-Planters' Bank & Trust Company and the Erwin National Bank, over the objection of defendants, a copy of the two proceedings held before J. M. Gouge, a Justice of the Peace at Erwin, for said copies were not the best evidence."

The two "proceedings" to which this assignment refers were two executions issued by J. M. Gouge, a justice of the peace of Unicoi county, purporting to be based upon two certified executions from a justice of the peace of Greene county. Code 1932, section 8932. There were nulla bona returns (as to N. D. Riddle and Gertrude Riddle) indorsed on said executions issued by J. M. Gouge, justice of the peace. Said two executions issued by J. M. Gouge, J. P., were filed as exhibits to the deposition of T. R. Keys, president of complainant bank, which deposition was taken several months before

the hearing of the cause. When said deposition was taken, the solicitor of defendants excepted to the exhibits in question, but it does not appear that the exception was renewed at the hearing, or that a ruling of the chancellor was at any time invoked thereon.

Objections to the competency of evidence, or objections to a transcript on the ground that it is not duly certified, must be made when the evidence is offered at the hearing, or they are waived. Gibson's Suits in Chancery (3 Ed.), sec. 512, subsec. 3, and sec. 535, subsec. 2. And where a ruling by the chancellor was neither asked nor made, the matter stands as though no objection was ever made to the evidence. Sahlien v. Bank, 90 Tenn., 221, 225, 16 S. W., 373.

Moreover, if the exhibit in question under this assignment of error had been excluded, it would not affect the result, as its only probative value was to show a nulla bona return of an execution against N. D. Riddle and Gertrude Riddle, as evidence of their insolvency, and, as heretofore pointed out, their insolvency was sufficiently shown by other evidence.

This disposes of all the assignments of error. They are all overruled, and a decree will be entered affirming the decree of the chancery court and remanding the cause for the execution of the decree under the direction of that court.

The costs of the cause, including the costs of the appeal, will be first paid out of the proceeds of the property when sold, and the remainder of the proceeds will be distributed as decreed by the chancellor; but if the proceeds of sale should be insufficient to satisfy the decree, then execution may issue against defendants for the deficit.

Crownover and DeWitt, JJ., concur.