**PENN MUTUAL LIFE INSURANCE COMPANY, Plaintiff,**

v.

**CLEVELAND MALL ASSOCIATES; Clev–Tenn Associates; Cleveland Mall Corporation; Steven Frankel; Martin Barell; Donald Shack; C.B.L. Management, Inc.; Lebcon Associates; and Sears, Roebuck and Co., Inc., Defendants.**

No. 1:93–cv–77.

United States District Court, E.D. Tennessee.

Feb. 7, 1996.

Harry S. Mattice, Jr.; Roger W. Dickson, Miller & Martin, Chattanooga, TN, for Plaintiff.

Hugh J. Moore, Jr.; Philip B. Whitaker, Jr., Witt, Gaither & Whitaker, Chattanooga, TN, and Richard M. Resnik, Mandel & Resnik, New York City, for Defendants.

### MEMORANDUM AND ORDER

EDGAR, District Judge.

#### I.

This matter is before the Court upon the motion in limine of defendants CBL Management, Inc. ("CBLM"), Lebcon Associates ("Lebcon") and CBL Associates, Inc. ("CBLA") (collectively the "CBL" defendants) (Court File No. 196) and the motion in limine of Cleveland Mall Associates ("CMA"), Cleveland Mall Corporation ("CMC"), Clev–Tenn Associates ("Clev–Tenn"), Martin C. Barell ("Barell"),[1] Donald Shack ("Shack") and Steven A. Frankel ("Frankel") (collectively the "CMA" defendants) (Court File No. 198).

#### II.

This lawsuit centers upon a loan made by plaintiff Penn Mutual Life Insurance Company ("Penn Mutual") to CMA to update the Cleveland Mall in Cleveland, Tennessee. During the course of their negotiations for this loan, Penn Mutual alleges that both the CBL and CMA defendants knowingly and/or negligently made representations concerning the continued status of Sears, Roebuck and Co. ("Sears") as an anchor tenant at the Cleveland Mall. Following the loan closing, Sears vacated the Cleveland Mall, CMA defaulted, and Penn Mutual foreclosed on the property. At the time of the foreclosure sale, June 7, 1991, the outstanding balance on the non-recourse loan was approximately $5.5 million. Penn Mutual, as the sole bidder at the sale, bid the real estate in at just under $5 million. Thereafter, Penn Mutual claims that it learned of the events which gave rise to its allegations of fraud and breach of fiduciary duty. Penn Mutual sold the property for $1.5 million more than four years after it had purchased it at the foreclosure sale. The motions in limine seek to have this Court determine whether for the purposes of any damage calculations, the value of the Cleveland Mall is the amount that Penn Mutual bid for it at the foreclosure sale.

#### III.

■ At the heart of this issue is the decision in *Whitestone Savings and Loan Assoc. v. Allstate Ins. Co.*, 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694 (1971). In that case the New York Court of Appeals held that "a mortgagee who bid[s] in the full amount of the secured debt at the foreclosure sale in order to obtain the mortgaged property, [does not] retain[ ] any insurable interest entitling it to sue on a fire insurance policy under a mortgagee loss payable clause." The *Whitestone* rule, then, operates as a bar to additional recovery by a mortgagee who successfully bids for property at a foreclosure sale by deeming the price bid at such a sale to be the value of the property. While the parties do not dispute the adoption and

---

1. Subsequent to the commencement of this action Mr. Barell died. Phyllis Barell, executrix of the estate of Martin Barell, has been substituted as a party defendant (Court File No. 64).

application of the *Whitestone* rule by the Tennessee courts,[2] Penn Mutual vigorously maintains that the rule has no application in this case. Penn Mutual argues that the *Whitestone* rule is a creature of contract law, and has no application where a tort action based upon fraud is brought against the mortgagor by a mortgagee. However, in making this argument, Penn Mutual is confronted with *Chrysler Capital Realty, Inc. v. Grella*, 942 F.2d 160 (2d Cir.1991), wherein the Second Circuit, with facts similar to those in this case, held that the *Whitestone* rule requires the foreclosed collateral to be valued at the price that the mortgagee bid for it at a foreclosure sale.

 Penn Mutual contends that the Second Circuit, applying Michigan law, made the wrong decision because the policy reasons behind the *Whitestone* rule do not apply when a fraud claim is asserted by the mortgagee. Under the *Whitestone* rule, "a mortgagee is entitled to one satisfaction of the debt and no more." 321 N.Y.S.2d at 864, 270 N.E.2d at 696. Where "the mortgagee has voluntarily converted the debt into the property and has done so by taking the property in satisfaction of the debt," the mortgagee has openly and voluntarily valued that debt. *Id.* To allow the mortgagee another opportunity to value the collateral would itself encourage fraud, create uncertainty as to the mortgagor's rights, and deprive the sale of "whatever leaven comes from other bidders." 321 N.Y.S.2d at 866, 270 N.E.2d at 697. The Supreme Court of Tennessee has said that the purpose of the rule is "to prevent a mortgagee from receiving double payment." *Benton Banking Co. v. Tenn. Farmers Mut. Ins. Co.*, 906 S.W.2d 436, 439 (Tenn.1995). The Tennessee Court of Appeals, citing *Whitestone*, said that:

> Property should bring its fair market value at foreclosure sales. Mortgagees who bid in the property for the full amount of the debt must have determined that the property was worth at least as much as the debt since reasonably prudent lenders would not purchase property for more than its fair market value and would not impru-

dently relinquish their right to pursue a deficiency against the mortgagor. Allowing mortgagees to purchase property for the full amount of the debt to assert that the property is actually worth less than their bid undermines the integrity of the foreclosure sale itself and creates the possibility of fraud or of a double recovery when the mortgagee seeks the proceeds of any insurance on the property.

*First Investment Co. v. Allstate Ins. Co.*, 1994 WL 421429, at *2 (Aug. 12, 1994), *permission to appeal denied*, Oct. 2, 1995.

 Penn Mutual concedes that these policy reasons are valid when applied to contractual disputes where the mortgagee seeks a deficiency against the mortgagor, or seeks to collect pursuant to a loss payee clause in a fire insurance policy after having foreclosed on the insured collateral. However, Penn Mutual says that these policy reasons are inapplicable where (1) there is alleged fraud on the part of the mortgagor; and (2) the loan secured by the mortgage is non-recourse.

Should there be a tort/fraud exception to the *Whitestone* rule? No. Essentially, Penn Mutual says that a rule designed to prevent fraud should not be allowed to further a fraud against Penn Mutual as the mortgagee. This argument was rejected by the Second Circuit in *Grella:*

> In spite of th[e] case law [adopting and applying *Whitestone* ], Chrysler would have us carve out an exception to the rule whenever the mortgagee claims that the underlying mortgage transaction was induced by fraud.... [T]he Michigan courts have explicitly adopted the *Whitestone* rule and have applied it consistently in several circumstances. These decisions mark the course of Michigan law in this area; in them, we discern no indication that would authorize or require a fraud exception to the firmly-established *Whitestone* rule.
>
> . . . .
>
> The *Whitestone* rule protects mortgagors from deficiency actions after a fore-

2. *See Benton Banking Co. v. Tenn. Farmers Mut. Ins. Co.*, 906 S.W.2d 436 (Tenn.1995); *First Investment Co. v. Allstate Ins. Co.*, 1994 WL 421429 (Tenn.Ct.App. Aug. 12, 1994).

closure sale and brings certainty to the foreclosure proceedings. Although a borrower may fraudulently induce a mortgage loan, the mortgagee may always limit his damages from the fraud by bidding for the security no more than its fair market value at the time of the foreclosure sale. Moreover, applying *Whitestone* in some circumstances but not in others, would, in effect, destroy its utility in all circumstances.

942 F.2d at 163.

The policy reasons for the *Whitestone* rule are not changed by characterizing the course of action as either contract or tort. As the Court in *Grella* said, "the important policy of finality in foreclosure sales must prevail in these circumstances." *Id.* Moreover, whether an application of the *Whitestone* rule would work a fraud upon Penn Mutual begs the question of the outcome of this entire case. A different result might be reached in a case where it is contended that the mortgagor made fraudulent representations that caused the mortgagee at the foreclosure sale to bid more for the collateral than it would otherwise have bid. *See Alliance Mort. Co. v. Rothwell*, 10 Cal.4th 1226, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995). But such is not the case here. By the time Penn Mutual bid for the property at the foreclosure sale, it was well aware that the value of the Cleveland Mall may have been affected by the removal of Sears as an anchor tenant.

Should the *Whitestone* apply where the loan is non-recourse, *i.e.*, where, as was the case here, the mortgagee can look only to the collateral for satisfaction of the debt? Penn Mutual says that a mortgagee could not be motivated to manipulate its bid so as to pursue a deficiency against the mortgagor, especially in the absence of other bidders. Therefore, says Penn Mutual, there is no policy reason to apply *Whitestone* in this case. Yet there is also no reason under these facts that Penn Mutual would not have submitted a bid for the property for anything other than what it was worth to Penn Mutual. Moreover, even though a mortgagee might not, with a non-recourse loan, be pursuing a deficiency, it could, as did Penn Mutual in this case, pursue the mortgagor for other reasons. In this event a double recovery is no more desirable than it would be if a deficiency were being sought. As the Second Circuit determined in *Grella*, the non-recourse status of the loan does not prevent application of the *Whitestone* rule.

Finally, Penn Mutual contends that it would be an injustice to apply the *Whitestone* rule in this case because to do so would be to retroactively apply a "previously unannounced rule of law." This contention is not supportable. To begin with, as the *Whitestone* court pointed out, the rule is not harsh. 321 N.Y.S.2d at 865–67, 270 N.E.2d at 697. Penn Mutual had the option of bidding whatever it deemed the property to be worth. Nor is the application of the rule to Penn Mutual's bid "retroactive." In 1983, long before the events which gave rise to this case, the substance of the *Whitestone* rule (without mentioning *Whitestone* ) was clearly applied by the Tennessee Court of Appeals in *Duke v. Daniels*, 660 S.W.2d 793, 794–95 (Tenn.Ct.App.1983). Certainly there was no authority to the contrary upon which Penn Mutual could have relied upon to its detriment.

## IV.

For all these reasons, the defendants' motions in limine (Court File Nos. 196 and 198) are hereby **Granted**. The value of the Cleveland Mall will, for the purposes of any damage calculations in this case be the amount that Penn Mutual successfully bid for it at the foreclosure sale.

SO ORDERED.