IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 22, 2006 Session

## LOST MOUNTAIN DEVELOPMENT CO. v. RUFUS KING v. MATTHEW B. KEZAR, ET AL.

Appeal from the Chancery Court for Franklin County
No. 16,818    Jeffrey F. Stewart, Chancellor

No. M2004-02663-COA-R3-CV - Filed on December 19, 2006

This case involves a creditor's entitlement to a deficiency judgment after a foreclosure sale in which the creditor was the only bidder, and in which he paid considerably less for the large tract of mountaintop property than the debtor alleged it was worth. The trial court awarded the creditor's successor-in-interest a deficiency judgment of over $4 million, holding that in accordance with the rule of *Holt v. Citizens Central Bank*, 688 S.W.2d 414 (Tenn. 1984), the debtor should not be permitted to challenge the legal presumption that the value of the property at the time of foreclosure was equal to the sale price because there was no evidence of "irregularity, misconduct, fraud or unfairness on the part of the mortgagee." Since the *Holt* case did not involve a deficiency judgment, we believe it is inapplicable. After examining both the law of Tennessee and that of other jurisdictions, we conclude that the trial court should have permitted the defendant to challenge the presumption by attempting to prove that the sale price was grossly inadequate. We accordingly reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., filed a concurring opinion.

John C. Cavett, Jr., Chattanooga, Tennessee, for the appellant, Bemis Smith

Brad A. Lampley, Nashville, Tennessee; Peter J. Mackey, Bradenton, Florida, for the appellees, William Manful, et al.

# OPINION

## I. The Initial Transactions

On March 6, 2000, Rufus King sold a 4,650 acre tract of mountaintop land in Franklin County, Tennessee, to Lost Mountain Development Company, a group of Florida investors organized as a Tennessee general partnership. The purchase price was $4,600,000. The Lost Mountain partners planned to divide a portion of the property into five and ten acre lots, and sell the lots as part of a private gated community. They hoped that the beauty of the property's hardwood forests and its proximity to state parks, golf courses, the University of the South, and other attractions would make their venture successful.

The partnership paid Mr. King $150,000 at closing and gave him a promissory note for the balance. The note carried an interest rate of 8% and was to be paid off in 29 monthly installments. It was secured by a deed of trust on the property. Four Lost Mountain partners, Matthew Kezar, Ken McKeithen, Mark Ogles and Bemis Smith also executed personal guaranties on the note.

Unfortunately for the partnership, it was unable to pay the scheduled installments. After it missed five payments, Mr. King began foreclosure proceedings. The parties then renegotiated the terms of the loan, and Mr. King cancelled his foreclosure efforts. The partnership paid $800,000 in cash under an amended agreement to catch up with back interest, with the remainder to be applied to the principal.

In order to obtain the cash for the refinancing, the partners had borrowed $500,000 from another Florida investor, William Manfull. Aside from the four original partners of Lost Mountain Development Company, four additional individuals signed the amended agreement on behalf of Lost Mountain Development Company, including Mr. Manfull.[1]

The new payment schedule included interest-only monthly installment payments of about $25,000, and a single balloon payment of $3,838,593 due on May 1, 2001. The Lost Mountain partnership apparently managed to make the monthly payments, but was unable to make the balloon payment. The default again left Lost Mountain's property interest subject to possible foreclosure.

## II. A Lawsuit and Subsequent Transactions

On October 11, 2001, Lost Mountain filed a complaint against Rufus King in the Chancery Court of Franklin County. The complaint, which Mr. King characterized as a preemptive strike, alleged fraud, negligent misrepresentation and breach of contract on his part, and asked the court to

---

[1]Mr. King later learned through discovery that the four additional signatories to the amended agreement did not consider themselves members of the Tennessee general partnership called the Lost Mountain Development Company. Instead, they contended they were shareholders in a Florida corporation, named Lost Mountain, Inc., which was created to act as the managing partner of the Lost Mountain partnership.

enjoin foreclosure. Although foreclosure was enjoined for a time, the injunction was eventually dissolved.

Rufus King responded to the complaint on October 31, 2001 with an answer, a counter-complaint against Lost Mountain, and a third party complaint against the eight individuals who had signed the amended agreement. Lost Mountain subsequently filed for bankruptcy protection under Chapter 11, after which Mr. King filed a motion for partial summary judgment against the four signatories to the original agreement on their personal guaranties and against the eight signatories to the amended agreement on their third party liability. He argued that the automatic stay in bankruptcy did not prevent him from pursuing individual partners who remained jointly and severally liable under Tennessee law.

The parties managed to resolve some of their differences, resulting in dismissal of the Chapter 11 proceeding and dismissal with prejudice of Lost Mountain's claims against Mr. King. The injunction against foreclosure was dissolved, and Mr. King was the only bidder in the May 30, 2003 foreclosure sale on the courthouse steps. He bid $1.1 million for the property, and he then filed a motion for summary judgment in Chancery Court asking for a deficiency judgment in the amount of approximately $4 million.

Prior to the hearing of the summary judgment motion, William Manfull purchased the property in question from Mr. King (with the exception of several hundred acres, which Mr. King retained) as well as Mr. King's deficiency claim, paying a total of $2,975,000. Mr. Manfull then moved the court to be substituted for Mr. King as counter plaintiff/third party plaintiff, based on the assignment of Mr. King's rights. The trial court granted his motion.

Mr. Manfull reached settlements with six of the third party defendants prior to hearing, and he released them from liability. He then proceeded against Bemis Smith, the sole remaining individual defendant. The hearing on the summary judgment motion was conducted on May 13, 2004. In its final order of summary judgment, the court found that Mr. Smith "has not presented evidence of 'irregularity, misconduct, fraud or unfairness on the part of the mortgagee' to overcome the legal presumption that the value of the property at the time of foreclosure is equal to the sale price." The court accordingly awarded Mr. Manfull a judgment against Bemis Smith in the amount of $4,426,135.[2] This appeal followed.

### III. A QUESTION OF LAW

For the purposes of this appeal, there is no dispute as to the facts material to the summary judgment issue. We are called upon to determine a question of law: whether the court may deny or reduce a deficiency judgment to a lender who buys property at a foreclosure sale solely on the basis

---

[2]The court's calculation of damages included the outstanding balance on the loan, accumulated interest, taxes, miscellaneous fees, attorney fees of over $133,000, and liquidated damages of $500,000 pursuant to the amended purchase agreement.

of inadequacy of price, if no fraud, collusion, irregularity or unfairness is proven in regard to the conduct of the sale.[3] Mr. Smith does not allege that there was any irregularity in the foreclosure sale itself, but he contends that the court can and should deny a deficiency judgment in situations where to grant such a judgment would result in a windfall for the lender and be highly inequitable to a borrower.

Mr. Smith argues that the Lost Mountain property was worth far more than the $1,100,000 that Mr. King paid for it at foreclosure. He points to a detailed appraisal report that valued the land at $4,000,000. That appraisal does not include the value of minerals or other resources on the land, upon which an independent mineral appraisal placed a minimum value of $9,000,000, "based on probable mineral and stone reserves."[4] Mr. Smith notes that Mr. Manfull put the land up for auction, and published an advertisement for the property which stated "timber study shows over $2,000,000 in timber." Further, Mr. King signed a sworn statement as a creditor in Lost Mountain's bankruptcy proceeding that his collateral was worth $4,180,000.

The trial court relied on the case of *Holt v. Citizens Central Bank,* 688 S.W.2d 414 (Tenn. 1984) in reaching its judgment, and both parties agree that the *Holt* case must be considered in any discussion of their respective legal rights. In that case, Hoyte Holt defaulted on a note held by the defendant bank, which was secured by a deed of trust on a Murfreesboro property. The bank foreclosed on the property, and it was sold to a bona fide purchaser for $8,600, which was apparently just about enough to extinguish the debt. The purchaser sold the property ten days later for $30,000. There was no evidence of fraud or collusion between the bank and either purchaser.

Mr. Holt filed suit to set aside the foreclosure sale on the ground of inadequacy of price. The trial court refused to set aside the sale. This court reversed, relying on established precedent that required a court of equity to set aside a foreclosure sale where the price is so inadequate as to shock the conscience of the court.

The Tennessee Supreme Court granted permission to appeal and ruled that the "conscience-shocking" rule was impractical and should be abandoned. The court reasoned that the standard for what might shock the conscience of the court was so vague in theory and variable in practice that under that rule no buyer or seller could feel comfortable with title to real estate acquired at a foreclosure sale if the sale brought less than the appraised value of the property. *Id.*, 688 S.W.2d at 416. The court accordingly announced a new rule as follows: "If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or mortgagee that caused or contributed to an inadequate price **for a court of equity to set aside the sale**." *Id.* (emphasis added).

---

[3]Mr. King was the lender who foreclosed, bought the property and requested a deficiency judgment. Mr. Manfull then bought the property and the claim, in effect stepping into Mr. King's shoes.

[4]An operating limestone mine was formerly located on the property.

Mr. Smith points out that the *Holt v. Citizens Central Bank* holding did not deal directly with the propriety of a deficiency judgment after a sale at foreclosure, but only with what might be required to set the sale aside. He accordingly contends that it should not be construed as controlling authority for this case. He also argues that where the original owner purchases the property at foreclosure for a fraction of its actual value and is made whole by the purchase, the court should not grant him an unconscionable windfall by ordering the debtor to pay him a deficiency judgment.

Mr. Manfull argues to the contrary that Mr. Smith's argument has been foreclosed by this court's opinion in *McDill Columbus Corp. v. the Lakes Corporation,* No. 03A01-9112CV00445, 1992 WL 115576 (Tenn. Ct. App. June 1, 1992) (perm. app. denied Oct. 26, 1992). In that case, the holder of a note had paid $700,000 at foreclosure for a campground complex, and sued for a deficiency of almost $550,000 on the note. At trial, the debtor presented an appraisal that valued the property at the time of foreclosure at over $2 million. The proof also showed that the creditor offered the property for sale at a price of $1.9 million. The trial court ruled in favor of the plaintiff and granted it a judgment for the deficiency, accrued interest, and expenses. On appeal, this court noted that the debtor did not prove any fraud or bad faith on the part of the creditor, and we cited the rule set out in *Holt v. Citizens Central Bank*, *supra,* declaring that the decision in that case was "broad enough to embrace the issues in the case at bar." *McDill*, 1992 WL 115576 at *2.

However, Mr. Smith counters by citing another opinion of this court which appears to retreat from our holding in *McDill*, at least in part. *B&H Investments v. Brooks*, No. W1999-01252-COA-R3-CV, 2000 WL 1141566 (Tenn. Ct. App. Aug. 10, 2000) (no Tenn. R. App. P. Rule 11 application filed) involved a debtor who borrowed about $20,000 to purchase a piece of property. After he defaulted on the note, the creditor foreclosed and purchased the property itself for $6,000. The creditor then allegedly sold the property for $18,000 and subsequently obtained a $16,000 deficiency judgment against the debtor in the trial court. Because the record was incomplete, we remanded the case to the trial court for a determination of whether the property was actually sold, and if so for what price.

In doing so, we cited our holding in *McDill*, that if a contract so permits, a creditor will be allowed to recoup a deficiency as a matter of legal right "unless there is bad faith or fraud in connection with the foreclosure." However, we went on to say that ". . . the court disfavors deficiency judgments when the party has been made whole and seeks a windfall." *B&H Investments* at *2 (citing the case of *Union Joint Stock Land Bank of Louisville v. Knox County*, 97 S.W.2d 842, 846 (Tenn. Ct. App. 1936).

Mr. Smith is asking this court to take the next step and declare that it would be inappropriate for a court to award a deficiency judgment under circumstances that would unjustly enrich the creditor. He reasons that it would not violate the *Holt* rule to disallow a deficiency judgment where the foreclosing party does not need such a judgment to be made whole, or where some irregularity outside of the sale itself would make it inequitable for the creditor to receive a windfall. Mr. Smith argues that under the trial court's interpretation of the law, it might be hypothetically possible for a creditor who was careful to make sure the foreclosure proceeding was free of defects to bid only

$1 for property worth $100,000 at the foreclosure sale, recover the property, and also obtain a $99,999 deficiency judgment against the debtor.

## IV. REQUIREMENTS FOR DEFICIENCY JUDGMENTS AFTER FORECLOSURE SALE

This court must follow the dictates of the Tennessee Supreme Court as set out in *Holt v. Citizens Central Bank*, *supra*. However, we agree with Mr. Smith that *Holt* addressed the requirements for setting aside a foreclosure and did not involve a suit for deficiency judgment. While the *McDill* and *B&H Investments* opinions are persuasive authority, we are not bound to follow them. Tenn. R. Sup. Ct. 4 (H)(1).

Before deciding whether we should adopt the *Holt* rule for deficiency judgment cases, thereby agreeing with *McDill*, or establish some other standard such as those used in other states, we think it prudent to identify what Tennessee law on this subject was prior to *Holt*. That exercise will tell us what the law currently is if *Holt* made no change in the law of deficiency judgments.

Prior to *Holt*, the relevant rules on deficiency judgments after a foreclosure sale of real property were: (1) the value of the property sold is not looked to in a deficiency case unless there is a charge of fraud in the manner of sale or a charge that the sales price was grossly inadequate; (2) in the absence of an allegation of irregularity in the sale, there is a presumption that the price brought at the public sale is the fair market price of the property; and (3) where gross inadequacy is claimed, the burden of overcoming the presumption attached to a sale free of irregularity is on the defendant against whom a deficiency judgment is sought. *Duke v. Daniels*, 660 S.W.2d 793, 795 (Tenn. Ct. App. 1983).

Thus, a debtor could raise the issue of inadequacy of the foreclosure sales price as a defense to an action to collect the difference between the amount owed and the foreclosure proceeds. In that situation, the issue before the court is "the value of the real estate at the time of the foreclosure." *Id.*, 660 S.W.2d at 794. What the *Duke* opinion makes clear, however, is that there are certain guidelines that must be applied by the court, including the presumption that attaches where the defendant does not allege any illegality, fraud or impropriety in the manner of the sale. Nonetheless, the debtor is entitled to present evidence about the fair market value of the property at the time of the sale so as to attempt to overcome the presumption and prove that the sale price was grossly inadequate.[5]

---

[5] Courts in other jurisdictions have interpreted *Duke v. Daniels* as permitting the issue of the value of foreclosed property to be raised in a deficiency judgment action. *See, e.g., Fayette County National Bank v. Lilly*, 484 S.E.2d 232, 238 (W. Va. 1997). Others have cited it for establishing a presumption that the sales price is fair, and the debtor must show gross inadequacy to overcome that presumption. *National Canada Corporation*, 868 P.2d 1131, 1134-35 (Colo. Ct. App. 1993). The court in *National Canada* also equated the *Duke* holding with Colorado authority that the sales price is conclusive unless the debtor pleads and proves that the sale was "not conducted in a strictly fair manner" and if the sale was unfair, the amount of the deficiency is to be determined by the factfinder.
.

The principles set out in *Duke* are consistent with earlier cases, such as *Erwin Nat. Bank v. Riddle*, 79 S.W.2d 1032 (Tenn. Ct. App. 1934), wherein the court held that the decree of the trial court operated to give the debtors credit for the approximate value of the property at the time of sale. *Id.*, 79 S.W.2d at 1041. The court discussed the proof of market value considered by the trial court and its resolution of the matter by persuading the lender to reduce its deficiency judgment request. *Id.*, at 1040-41. *Erwin* was a deficiency judgment case where no challenge to the conduct of the sale was made. Its primary relevance is that the court allowed proof as to the fair market value of the property, as distinguished from the amount paid for the property at the foreclosure sale, so as to decide the propriety of the amount of the deficiency judgment.

Similarly, in *Brown v. Eckhardt*, 129 S.W.2d 1122 (Tenn. Ct. App. 1939), the trial court heard from many witnesses, including appraisers, as to the value of the real property as of the date of the foreclosure sale. That proof was relevant because the debtors alleged that the amount bid by the creditor at the foreclosure sale was inadequate and "[t]he inadequacy, if any, must be determined on the basis of the real value of the land at the time of the sale and its relation to the total debt against the property" in the purchaser's hand.[6] *Id.*, 129 S.W.2d at 1128.

While the standard set out in *Duke v. Daniels* has been expressed in different ways,[7] no court has directly overruled it. In *Orlando Residence, Ltd. v. Nashville Lodging Co.*, 104 S.W.3d 848, (Tenn. Ct. App. 2003), which was not a deficiency judgment action *per se*, this court cited both *Duke v. Daniels* and *Holt* for the proposition that conclusive effect is given to the foreclosure sale price absent some evidence of "irregularity, misconduct, fraud or unfairness on the part of the trustee or mortgagee."

## V. ANALYSIS

We have concluded that *Holt* did not address the deficiency judgment situation and did not mention *Duke v. Daniels* or any other deficiency judgment case, and there is no other controlling authority that changes the rules explained in *Duke*. Consequently, the question we must decide is whether to adopt the *McDill* statement that the *Holt* rule should be applied to actions for deficiency

---

[6] Although it is not entirely clear, it appears that the inadequacy of the foreclosure sales price was raised in connection with an argument to set aside the sale. However, the court did not place the comments quoted in the context of a ground for setting aside the sale as distinguished from a reason to reduce or deny a deficiency judgment.

[7] For example, in a case focusing on damages sustained through misrepresentation in the purchase of a home, this court cited *Duke* for the proposition that the foreclosure bid, absent any irregularity in the foreclosure itself, is the best evidence of value at the time of the sale. *Perry v. Flatford*, No. 03A01-9609-CH-00305, 1997 WL 44438 (Tenn. Ct. App. Feb. 5, 1997) (perm. app. denied June 30, 1997). The court added, "It is well-nigh conclusive." *Id.*, at * 3. In *Albin v. Union Planters National Bank*, 660 S.W.2d 784, 786 (Tenn. Ct. App. 1983), the master and trial court determined that the foreclosure sales price was the fair market value, and although the opinion does not detail the evidence below, it remarks that the record of proof on all the issues was voluminous and that none of the master's findings were precipitously made. In holding that the trial court was not required to hear evidence of a later sale of the property by the foreclosing lender, this court stated such evidence would only be material if the foreclosure sale price had been so low as to shock the conscience. *Id.*

judgment as well as actions to set aside a foreclosure sale, thereby overruling *Duke v. Daniels.* Even if we decide not to follow *McDill*, we can also consider whether to adopt a rule from another jurisdiction that modifies *Duke v. Daniels.*[8]

We begin with the *Holt* decision itself.  There are a number of important reasons to limit the bases upon which a foreclosure sale may be set aside.  Traditionally, the courts have imposed higher burdens upon parties seeking to rescind a deed or other transaction or to set aside or vary the terms of recorded instruments.  The Court in *Holt* was particularly concerned with the vagueness and variability of the old rule and in providing a greater degree of reliability and certainty to parties who purchased land at a foreclosure sale.  Those reasons do not apply with equal force to a post-foreclosure suit for deficiency judgment where the creditor was the only bidder at the foreclosure sale and no parties are involved in the deficiency action other than the creditor and debtor.

Additionally, the *Holt* rule speaks in terms of "irregularity, misconduct, fraud, or **unfairness** on the part of the trustee or mortgagee." (emphasis added)  *See also Orlando Residence, Ltd.* 104 S.W.3d at 855 (including unfairness on the part of the mortgagee as a basis for avoiding the conclusive effect of the sales price).  In states where fairness of the sale or unfair actions by the creditor can be raised in defense of a deficiency judgment, the foreclosing creditor's failure to bid the fair value may be a factor in determining unfairness.  *National Canada Corporation*, 868 P.2d 1131, 1134-35 (Colo. Ct. App. 1993) (holding that under Colorado authority the sales price is conclusive unless the debtor pleads and proves that the sale was "not conducted in a strictly fair manner," and a creditor's failure to bid the fair value together with other factors may be evidence of unfairness).

Absence of irregularity in the conduct of the sale may be a good reason to refuse to set aside a foreclosure sale, especially in view of the other interests that may have attached after the sale.  However, unfairness in the conduct of the sale is not the only kind of unfairness that may result from a foreclosure sale to the creditor who was the sole bidder.  That situation creates the possibility of unfairness in the price that is bid, no matter how strictly the technicalities relating to a foreclosure sale are followed.  Thus, allowing a debtor to raise the inadequacy of the sale price, as an indication of unfairness on the part of the mortgagee, is not inconsistent with the quoted language from *Holt* or contradictory to its goals.

The goal of fairness underlies the deficiency judgment approach taken by the Restatement (Third), which is based on determination of the fair market value of the land, because that approach:

> . . . enables the mortgagee to be made whole where the mortgaged real estate is insufficient to satisfy the mortgage obligation, but at the same time protects against the mortgagee purchasing the property at a deflated price, obtaining a deficiency

---

[8]The parties have made some arguments based on authority from other states, and we have conducted research into the question of how other states approach deficiency judgments, having been informed that Tennessee was not in the majority (if the *Holt* holding applies to deficiency judgments).  We will discuss those findings later.

judgment and, by reselling the real estate at a profit, achieving a recovery that exceeds the obligation. Thus, it is aimed primarily at preventing the unjust enrichment of the mortgagee. This section also protects the mortgagor from the harsh consequences of suffering both the loss of the real estate and the burden of a deficiency judgment that does not fairly recognize the value of that real estate.

RESTATEMENT OF THE LAW (THIRD) OF PROPERTY (Mortgages) § 8.4, comment *a.*

The fairness concept has been incorporated in other situations involving foreclosure sale, and courts have adopted rules to protect debtors from unfairness in a creditor purchase at foreclosure and to prevent the creditor from receiving a double recovery. *See Penn Mutual Life Ins. Co. v. Cleveland Mall Associates*, 916 F. Supp. 715, 716-17(E.D. Tenn. 1996); *Whitestone Savings and Loan Assoc. v. Allstate Ins. Co.*, 270 N.E.2d 694 (N.Y. 1971). This court has stated:

> Property should bring its fair market value at foreclosure sales. Mortgagees who bid in the property for the full amount of the debt must have determined that the property was worth at least as much as the debt since reasonably prudent lenders would not purchase property for more than its fair market value and would not imprudently relinquish their right to pursue a deficiency against the mortgagor. Allowing mortgagees to purchase property for the full amount of the debt to assert that the property is actually worth less than their bid undermines the integrity of the foreclosure sale itself and creates the possibility of fraud or of a double recovery when the mortgagee seeks the proceeds of any insurance on the property.

*First Investment Co. v. Allstate Ins. Co.*, 917 S.W.2d 229, 231 (Tenn. Ct. App. 1995). Although the factual situation addressed in *First Investment Co.* is different from that in deficiency judgment situations, the goal of fairness should apply equally to both situations.

In addition, Mr. Smith makes another argument on the basis of the *Holt* decision itself. He observes that in rejecting the "conscience-shocking" standard, the *Holt* court adopted a rule that had previously been enunciated by the courts of Texas and North Carolina. *See Jinkins v. Chambers*, 522 S.W.2d 614 (Tex. App. 1981); *Swindell v. Overton*, 302 S.E.2d 841 (N.C. App. 1983), and cited those opinions with approval. He asserts that in both those states, however, the kind of deficiency judgment granted in this case would have been prohibited by operation of other features of the law, specifically statutes.[9]

---

[9] For example, under Texas law, a party against whom a deficiency judgment is sought may move the court to determine the fair market value of the real property at the time of the foreclosure sale. V.T.C.A. Property Code Section 51.003. If the court finds that the fair market value was greater than the foreclosure sale price, the debtor or debtors are entitled to an offset against the deficiency, in the amount by which the fair market value exceeded the sale price. V.T.C.A. Property Code Section 51.004. Under North Carolina law, where the holder of a secured obligation sells the real property at foreclosure and becomes the purchaser of the secured property at the foreclosure sale, the mortgagor is allowed to prove the reasonable value of the foreclosed property, and to use such value as a defense in deficiency suits.

(continued...)

We have concluded that *Holt* does not govern the issue in this case.  We also respectfully decline to adopt the *McDill* holding that the *Holt* opinion was "broad enough to embrace the issues in the case at bar."  To the extent *McDill* can be read to impose limitations on defenses to deficiency actions that are greater than those enunciated in *Duke v. Daniels*, we must also disagree with that holding and decline to adopt it herein.  Instead, we conclude that *Duke v. Daniels* sets out the well established law in this area, and the principles discussed therein apply to resolution of the case before us.

We see no need to attempt to alter or tweak the *Duke v. Daniels* standards.  That approach is similar to the one adopted by the Restatement of the Law of Property.  The applicable Restatement provision defines the deficiency as the difference between the mortgage obligation and the "fair value" of the foreclosed real estate.  RESTATEMENT OF THE LAW (THIRD) OF PROPERTY (Mortgages) § 8.4, Reporter's Note to Comment a.  The section on actions for deficiency after foreclosure provides:

> (a) If the foreclosure sale price is less than the unpaid balance of the mortgage obligation, an action may be brought to recover a deficiency judgment against any person who is personally liable on the mortgage obligation in accordance with the provisions of this section.

> (b) Subject to Subsections (c) and (d) of this section, the deficiency judgment is for the amount by which the mortgage obligation exceeds the foreclosure sale price.

> (c) Any person against whom such a recovery is sought may request in the proceeding in which the action for a deficiency is pending a determination of the fair market value of the real estate as of the date of the foreclosure sale.

> (d) If it is determined that the fair market value is greater than the foreclosure sale price, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any liens on the real estate that were not extinguished by the foreclosure, exceeds the sale price.

[9](...continued)
N.C.G.S.A. Section 45-21.36.  Most significantly, however, where a foreclosure of mortgaged property is for the remaining balance on a note executed as part of a purchase money transaction, "the mortgagee or trustee or holder of the notes secured by such mortgage or deed of trust shall not be entitled to a deficiency judgment. . . ." N.C.G.S.A. Section 45-21.38.  According to Mr. Smith, North Carolina recognizes that purchase money loans are different from other loans secured by real estate because the value of the property is evidenced by the arms-length transaction giving rise to the loan.  Since the present case arose from a purchase money transaction, he argues that if this case had been tried under North Carolina law Mr. Manfull would have been found to have no cause of action against him at all.

RESTATEMENT OF THE LAW (THIRD) OF PROPERTY (Mortgages) § 8.4 (Foreclosure: Action for a Deficiency).[10]

The Restatement provision differs from the *Duke v. Daniels* analysis in that it does not use the foreclosure sales price as the beginning point and the presumptive fair market value.[11] Whatever procedural rules or burdens of proof apply, under both analyses the issue in deficiency actions is the fair market value of the property at the time it was sold. Thus, the fundamental principle is that the deficiency judgment should reflect the difference in the fair market value, if it is greater than the sales price, and the amount still owed. We think this principle is well-grounded and promotes the goal of fairness.

Further, although other approaches may be used, including those imposed by statute, we think the use of the sales price as the presumptive fair value, with the debtor having the burden of raising its inadequacy and overcoming the presumption by proof is also sound. As indicated, the approach to deficiency judgments varies among the states. The drafters of the RESTATEMENT OF THE LAW (THIRD) OF PROPERTY have compiled those variances and explained them, and we copy that explanation here since it fully and accurately covers the area:

> Several states continue to adhere to the common-law rule that when a foreclosure sale does not yield at least the amount of the mortgage obligation, the mortgagee is entitled to a deficiency judgment measured by the difference between the foreclosure price and the mortgage obligation. Under this approach, the foreclosure sale price is the conclusive measure of the amount to be applied to the obligation unless the mortgagor can prove that the foreclosure process itself was defective. *See*, *e.g.*, *New England Sav. Bank v. Lopez*, 630 A.2d 1010 (Conn.1993) (power of sale foreclosure only); *Garland v. Hill*, 357 A.2d 374 (Md.1976); *Drannek Realty Co. v. Nathan Frank, Inc.*, 139 S.W.2d 926 (Mo.1940); *Lindell Trust Co. v. Lieberman*, 825 S.W.2d 358 (Mo. Ct. App.1992); *Rhode Island Depositors' Economic Protection Corp. v. Macomber*, 658 A.2d 511 (R. I. 1995); *McDill Columbus Corporation v. The Lakes Corp.*, 1992 WL 115576 (Tenn. Ct. App.1992); *Fitch v. Buffalo Federal Savings & Loan Ass'n*, 751 P.2d 1309 (Wyo.1988); *Abrams v. Federal Deposit Ins. Corp.*, 5 F.3d 1013 (6th Cir.1993) (Kentucky); *Resolution Trust Corp. v. Carr*, 13 F.3d 425 (1st Cir.1993) (Massachusetts). *Cf. Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418 (Ill. App. Ct. 1993) (foreclosure sale should be confirmed and deficiency

---

[10]We do not purport to adopt the Restatement, but merely point out that Tennessee law is not inconsistent with its major provisions.

[11]The Restatement also defines fair market value as specifically excluding the impact of the foreclosure. RESTATEMENT OF THE LAW (THIRD) OF PROPERTY (Mortgages) § 8.4, comment *c (Defining 'fair market value')*, which may be different from the approach taken by Tennessee courts, which have specifically recognized that prices at forced sales are frequently lower than if a voluntary sale had been negotiated. *See Holt v. Citizens Central Bank*, 688 S.W.2d at 416.

judgment entered unless "the terms of sale were unconscionable, . . . the sale was conducted fraudulently or . . . justice was not otherwise done.").

At the opposite extreme, some states flatly prohibit deficiency judgments in certain contexts. Some statutes bar a deficiency judgment after a power of sale foreclosure. *See* Alaska Stat. 34.20.100; Ariz. Rev. Stat. § 33-814(E); West's Ann. Cal. Code Civ. Proc. § 580(d); Mont. Code Ann. § 71-1-317; Wash. Rev. Code Ann. § 61.24.010, 040, 100. In addition, several state statutes prohibit a deficiency judgment after the foreclosure of a purchase money mortgage. *See* Ariz. Rev. Stat. § 33-729(A); West's Ann. Cal. Code Civ. Proc. § 580(b); Mont. Code Ann. § 71-1-232; N.C. Gen. Stat. § 45- 21.38; Or. Rev. Stat. § 88.070; So. Dak. Cod. Laws §§ 44-8-20 to 44-8-25. A few of these states apply the deficiency prohibition to vendor purchase money mortgagees only. *See* Mont. Code Ann § 71-1-232; N.C. Gen. Stat. § 45-21.38.

The Uniform Land Security Interest Act (ULSIA), promulgated by the National Conference of Commissioners on Uniform State Laws in 1985, permits deficiency judgments in general, but prohibits them as to purchase money mortgages given by mortgagor-occupants of residential real estate to vendors or third party lenders. ULSIA § 511(b). *See* Mixon and Shepard, Antideficiency Relief for Foreclosed Homeowners: ULSIA Section 511(b), 27 Wake F. L. Rev. 455 (1992).

This section not only rejects each of the foregoing limitations on deficiency judgments, but also the traditional common-law view that the foreclosure sale price should be automatically applied in measuring deficiency judgments. Instead, the section adopts the approach of the numerous states that through legislation or judicial decision define the deficiency as the difference between the mortgage obligation and the "fair value" of the foreclosed real estate. *See* Ariz. Rev. Stat. § 33-814 ("fair market value" as of the date of sale); West's Ann. Cal. Code Civ. Proc. §§ 580a ("fair market value" as of date of sale in power of sale foreclosure), 726(b) ("fair value" as of sale date in judicial foreclosure); Colo. Rev. Stat. Ann. § 38- 38-106 ("fair market value"); Conn. Gen. Stat. Ann. § 49-14(a) ("actual value" as of date title vested in mortgagee in strict foreclosure); Ga. Code Ann. § 44-14-161 ("true market value" as of sale date); Idaho Code § 6-108 ("reasonable value"); Kan. Stat. Ann. § 60-2415 ("fair value"); Me. Rev. Stat. Ann. tit. 14, § 6324 ("fair market value" at time of sale); Mich. Comp. Laws Ann. § 600.3280 ("true value" at time of sale); Minn. Stat. Ann. § 582.30, subd. 5(a) ("fair market value"); Neb. Rev. Stat. § 76-1013 ("fair market value" as of sale date); Nev. Rev. Stat. §§ 40.455-40.457 ("fair market value" as of sale date); N.J. Rev. Stat. § 2A:50-3 ("fair market value"); N.Y. Real Prop. Acts. § 1371 ("fair and reasonable market value" as of sale date); N.C. Gen. Stat. § 45-21.36 ("true value" as of sale date); N.D. Cent. Code §§ 32-19-06, 32-19-06.1 ("fair value"); Okla. Stat. Ann. tit. 12, § 686 ("fair and reasonable market value" as of sale date); Pa. Stat. Ann. tit. 42, § 8103 ("fair market value"); S.C. Code Ann. § 29-3-700 et seq. ("true value"); S.D. Codified Laws Ann. § 21-47-16 ("fair and

reasonable value"); Tex. Prop. Code Ann. § 51.003 ("fair market value" as of sale date); Utah Code Ann. § 57-1-32 ("fair market value"); Wash. Rev. Code Ann. § 61.12.060 ("fair value"); Wis. Stat. Ann. § 846.165 ("fair value").

A few states appear to have adopted the fair value approach through judicial decision. Florida courts have significant flexibility in determining whether to use the foreclosure price or the fair market value in measuring the deficiency. *See First Union National Bank of Florida v. Goodwin Beach Partnership*, 644 So.2d 1361 (Fla. Dist. Ct. App.1994); *Howell v. Gaines*, 608 So.2d 64 (Fla. Dist. Ct. App.1992); *Mizner Bank v. Adib*, 588 So.2d 325 (Fla. Dist. Ct. App.1991) (party seeking deficiency judgment must present competent evidence that the mortgage indebtedness exceeds the fair market value of the property); G. NELSON & D. WHITMAN, REAL ESTATE FINANCE LAW § 8.3 (3d ed. 1994). But *see Federal Deposit Insurance Corp. v. Hy Kom Development Co.*, 603 So.2d 59 (Fla. Dist. Ct. App.1992) (deficiency judgment based on foreclosure sale price "is the rule rather than the exception" unless fraud or other inequitable conduct infects the sale process). In Mississippi, in a deficiency proceeding, the mortgagee "must give the debtor fair credit for the commercially reasonable value of the collateral." *Shutze v. Credithrift of America*, 607 So.2d 55, 65 (Miss.1992). The Montana Supreme Court has used its inherent equitable powers to require that fair market value of the foreclosed real estate be the measure in a deficiency proceeding. *See Trustees of the Wash.-Idaho-Mont.-Carpenters-Employers Retirement Trust Fund v. Galleria Partnership*, 780 P.2d 608, 614 (Mont. 1989) ("When the fair market value of property is determined by the District Court, that figure would be the basis of a deficiency judgment, if any"). Vermont, a strict foreclosure state, requires that the value of the foreclosed real estate be applied to the mortgage obligation. *See Licursi v. Sweeney*, 594 A.2d 396, 398 (Vt.1991) (The property was valued by the court far in excess of the amounts owed. There is no deficiency, and the plaintiff cannot recover).

RESTATEMENT OF THE LAW (THIRD) OF PROPERTY § 8.4, Reporter's Note to Comment a.

We see no reason to modify or tweak the holding of *Duke v. Daniels* in light of the varying approaches surveyed. Consequently, we hold that the trial court should have applied the analysis set out in *Duke v. Daniels* to the deficiency action below.

## VI. RESULT

Mr. Smith raised as a defense the allegations that (1) the foreclosure sales price was grossly inadequate and (2) that the creditor unfairly bid that low price, acquired the land, and sought a deficiency judgment that would inequitably provide him a windfall. According to *Duke v. Daniel*, Mr. Smith then had the burden of overcoming the presumption that the price was fair. *Duke v. Daniels*, 660 S.W.2d at 795. We think the material he provided in support of his opposition to

summary judgment raised a dispute of fact as to the actual fair value which was sufficient to foreclose summary judgment for the creditor. Accordingly, we reverse the grant of summary judgment. Costs of this appeal are taxed against the appellees, William Manful, et al.


_____
PATRICIA J. COTTRELL, JUDGE